# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Federal Trade Commission, and
State of Nevada,

     Plaintiffs

v.

International Markets Live, Inc., et al.,

     Defendants

Case No. 2:25-cv-00760-CDS-NJK

**Modified Preliminary Injunction**

The Federal Trade Commission ("Commission") and the State of Nevada (collectively, "Plaintiffs"), filed their Complaint for Permanent Injunction, Monetary Judgment, and Other Relief ("Complaint") pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101–6108, Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and the Deceptive Trade provisions of Chapter 598 of the Nevada Revised Statutes, §§ 598.0915(5) and 598.0923(1)(c). The Plaintiffs also applied for a preliminary injunction, limited asset freeze, appointment of a monitor, and other relief.

## FINDINGS

The Court, having considered the complaint, the motion for preliminary injunction, declarations, exhibits, the proposed modifications to the already entered preliminary injunction,[1] and the memorandum of points and authorities filed in support thereof, finds that:

---

[1] ECF No. 104.

A.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.      There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and Chapter 598 of the Nevada Revised Statutes, that the ROSCA Defendants, as defined below, have engaged in and are likely to engage in acts or practices that violate Section 4 of ROSCA, 15 U.S.C. § 8403, and that Plaintiffs are therefore likely to prevail on the merits of this action.

C.      As demonstrated by documentation of Defendants' advertisements, documents and information provided by Defendants to Plaintiffs and submitted in support of Plaintiffs' Motion for Preliminary Injunction, testimony from Defendants' employees, consumer declarations, a report by Plaintiffs' survey expert, and the additional documentation filed by the Plaintiffs, the Plaintiffs have established a likelihood of success in showing that Defendants have: (1) made false or unsubstantiated claims regarding consumers' ability to earn substantial income trading in the financial markets, including consumers' ability to do so even if they lacked trading experience, significant time, or investable capital; (2) made false claims that their instructors were audited by the FTC; (3) made false or unsubstantiated claims regarding consumers ability to earn substantial income from Defendants' Business Venture; and (4) made material misrepresentations and false and misleading statements while engaged in telemarketing. Plaintiffs have also established a likelihood of success in showing that the ROSCA Defendants have: (i) failed to clearly and conspicuously disclose all material terms of their transactions before obtaining purchasers' billing information and (ii) failed to obtain purchasers' express informed consent before obtaining purchasers' billing information.

D.      There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, the TSR, and Nevada Revised Statutes, and ROSCA Defendants' ongoing violations of ROSCA, unless Defendants and ROSCA Defendants are restrained and enjoined by order of this Court.

E.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers—including monetary restitution, rescission, or refunds—will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court.

F.      Good cause exists for appointing an independent monitor over the Monitored Entities, as defined below, placing a limited freeze on the Corporate Defendants' assets, requiring preservation of the Individual Defendants' assets, permitting the Monitor and Plaintiffs to have immediate access to the Defendants' business premises, and permitting the Plaintiffs and the Monitor to take expedited discovery.

G.      Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, a preliminary injunction with a limited asset freeze on the Corporate Defendants' assets, the preservation of the Individual Defendants' assets, the appointment of a monitor, immediate access to business premises, expedited discovery, and other relief is in the public interest.

H.      This Court has authority to issue this order pursuant to Section 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

I.      No security is required of any agency of the United States for the issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

# DEFINITIONS

For the purpose of this order, the following definitions shall apply:

A.    **"Business Venture"** means any written or oral business arrangement, however denominated, whether or not covered by 16 C.F.R. Part 437, that consists of providing payment or other consideration for the right or means to offer, sell, or distribute Defendants' products or services.

B.    **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is easily noticeable (i.e., difficult to miss) and easily understandable by ordinary consumers, including in all of the following ways:

    1)    In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

    2)    A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

    3)    An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

    4)    In any communication using an interactive electronic medium, such as the Internet, an app, or software, the disclosure must be unavoidable. A disclosure is not Clear and Conspicuous if a consumer must take any

action, such as clicking on a hyperlink or hovering over an icon, to perceive and understand it.

5) The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6) The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7) The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8) When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes members of that group.

C.    **"Corporate Defendants"** means International Markets Live, Inc., also d/b/a IYOVIA, iMarketsLive, IM Mastery Academy, and IM Academy; IM Mastery Academy Ltd., f/k/a International Markets Live Ltd.; and Assiduous, Inc., and their affiliates, subsidiaries, successors and assigns.

D.    **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

E.    **"Document"** is synonymous in meaning and equal in scope to the use of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank

statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

F.    **"Electronic Data Host"** means any Person in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

G.    **"Earnings Claim"** means any representation to consumers, specific or general, about income, financial gains, percentage gains, profit, net profit, gross profit, or return on investment. Earnings Claims include, but are not limited to: (a) the details of specific profitable trades, whether actual or hypothetical; (b) references to quitting one's job, not having to work, financial freedom, or living off of income from trading in any financial market or multi-level marketing; (c) references to increased savings; (d) references to purchases, including a home, vehicle, boat, vacation, jewelry, luxury clothing and accessories, or travel; (e) claims that consumers will not lose money if they use a particular trading strategy; (f) claims that profits are likely, probable, or the "mathematical" result of applying a particular trading strategy; (g) any statements, claims, success stories, endorsements, or testimonials about the performance or profitability of representatives, endorsers, instructors or customers; and (h) any representation, even hypothetical, of how much money a consumer could or would earn.

H.    **"Independent Business Owner"** or **"IBO"** means any individual or entity who is participating in a Business Venture.

I.    **"Individual Defendants"** means Christopher Terry, a/k/a Chris Terry, and Isis Terry, f/k/a Isis De La Torre.

J.    **"Monitor"** means the monitor appointed in Section XIII of this order and any deputy monitors that shall be named by the monitor.

K. **"Monitored Entities"** means Corporate Defendants and any other entity that has conducted any business related to the marketing or sale of Defendants' Products, including receipt of assets derived from any activity that is subject of the Complaint in this matter, and that the Monitor determines is controlled or owned by any Defendant.

L. **"Negative Option Feature"** means a provision of a contract under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the negative option seller or provider as acceptance (or continuing acceptance) of the offer, including, but not limited to: an automatic renewal; a continuity plan; a free-to-pay conversion or fee-to-pay conversion; or a pre-notification negative option plan.

M. **"Person"** means any natural person or any entity, corporation, partnership, or association of persons.

N. **"Product"** means any Business Venture or Trading Training Service sold by Defendants.

O. **"ROSCA Defendants"** means Christopher Terry, a/k/a Chris Terry, Isis Terry, f/k/a Isis De La Torre, and International Markets Live, Inc., also d/b/a IYOVIA, iMarketsLive, IM Mastery Academy, and IM Academy.

P. **"Seller"** means any Person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

Q. **"Telemarketer"** means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

R. **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

S.    **"Trading Training Service"** means any product or service, including any program or plan, that is represented, expressly or by implication, to train or teach a consumer how to trade in any financial market, including the foreign exchange, binary options, cryptocurrency, or stock markets.

ORDER

**I.    PROHIBITED BUSINESS ACTIVITIES**

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, IBOs, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are preliminarily restrained and enjoined from:

A.    Making any Earnings Claim, expressly or by implication, unless the Earnings Claim is non-misleading, and, at the time such claim is made, Defendants: (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate that the claimed earnings are typical for consumers similarly situated to those to whom the claim is made; and (3) make the written substantiation available upon request to the consumer, potential purchaser, the Monitor, or the FTC;

B.    Misrepresenting or assisting others in misrepresenting, expressly or by implication:

        1)    The level of experience required for consumers to effectively use the good or service;

        2)    The time or effort required for consumers to effectively use the good or service;

        3)    The amount of capital required for consumers to effectively use the good or service;

4) That any government entity is auditing or reviewing the good or service or representations regarding the good or service;

5) Any material aspect of the nature or terms of a refund, cancellation, or exchange policy for the good or service; or

6) Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

C. Offering any good or service with a Negative Option Feature, without first:

1) Disclosing Clearly and Conspicuously, and immediately adjacent to the means of recording the consumer's consent for the Negative Option Feature, all material terms of the transaction before obtaining the consumer's billing information; and

2) Obtaining the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for the transaction.

D. In connection with Telemarketing of any goods or services:

1) Providing substantial assistance or support to any Seller or Telemarketer when that Person knows or should know that the Seller or Telemarketer is engaged in any actions that violates §§ 310.3(a), (c) or (d), or § 310.4 of the TSR; or

2) Violating any provision of the TSR, 16 C.F.R. Part 310, attached as **Attachment A**.

## II. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, IBOs, employees, and attorneys, and all other Persons in active concert or participation with any of

them, who receive actual notice of this order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any Person that any Defendant obtained in connection with any activity that pertains to the subject matter of this order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

III.    PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, IBOs, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.    Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.    Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' assets.

IV.    **PRESERVATION OF INDIVIDUAL DEFENDANTS' ASSETS**

**IT IS FURTHER ORDERED** that for the pendency of this order, each Individual Defendant shall not:

A.    Directly or indirectly, disburse, gift, spend, transfer, liquidate, or assign more than a cumulative amount of $75,000.00 (per Individual Defendant) of their assets without prior approval from the Court.

B.    Directly or indirectly, transfer any asset (including but not limited to digital currencies and non-fungible tokens) outside the United States.

V.    **ASSET FREEZE OVER CORPORATE DEFENDANTS**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets, wherever located, including outside the United States, that are:

        1)    Owned or controlled, directly or indirectly, by any Corporate Defendant;

        2)    Held, in part or in whole, for the benefit of any Corporate Defendant;

        3)    In the actual or constructive possession of any Corporate Defendant; or

        4)    Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Corporate Defendant.

B.    Opening or causing to be opened any safe deposit boxes, commercial mailboxes, or storage facilities titled in the name of any Corporate Defendant or subject to access by any

Corporate Defendant, except as necessary to comply with written requests from the Monitor acting pursuant to its authority under this order;

        C.      Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Corporate Defendant or of which any Individual Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this order was signed, an authorized signor; or

        The assets affected by this Section shall include: (1) all assets of the Corporate Defendants as of the time this order is entered; and (2) assets obtained by the Corporate Defendants after this order is entered if those assets are derived from any activity that is the subject of the complaint in this matter or that is prohibited by this order.

**VI.**    **EXCEPTIONS TO ASSET FREEZE OVER CORPORATE DEFENDANTS**

    **IT IS FURTHER ORDERED** that:

        A.      Notwithstanding the provisions of Section V, above, Corporate Defendants may:

            1)      Pay employees, other than Defendants, their usual current salaries;

            2)      Pay the current monthly or other periodic payment paid to individuals who serve as regular instructors;

            3)      Pay compensation to IBOs as calculated under Defendant International Markets Live, Inc.'s IYOVIA compensation plan;

            4)      Pay for internet services or other reasonable and necessary purchases in the ordinary course of business;

            5)      Make payments to fulfill federal, state, and local tax obligations; and

            6)      Pay for the employer's share of health insurance benefits already in effect;

B.      Provided, however, that no single or aggregate payment in any month to any single payee shall exceed $10,000 without prior approval of the Monitor. Any such payment shall be contingent on the Monitor's determination that both payor and payee are in compliance with this order.

C.      Defendants may submit to the Monitor a list of vendors or individuals to seek prior approval and the basis therefor. No later than the 15th day of each month, Corporate Defendants must file with the Monitor a list of payees and the amount of each payment authorized herein for the prior month. A duly authorized officer(s) of Corporate Defendants must certify the accuracy of the report.

**VII.    DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES**

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or Person who receives actual notice of this order (by service or otherwise) that (a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any asset that has been: owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; (b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or (c) has extended credit to any Defendant, including through a credit card account, shall:

A.      Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, refund, chargeback, or other disposal of any such Document or asset of any Corporate Defendant, as well as all Documents or other property related to such assets, except by further order of this Court.

Provided, however, this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established prior to entry of this order, up to the pre-existing credit limit.

Provided further, however, that asset holders may release funds for payments authorized pursuant to Section VI. Before the asset holder releases any funds, a duly authorized officer of the Corporate Defendant shall certify in writing to the entity releasing funds the amount to be released and that such assets will be used to make payments authorized by the Court or Monitor.  Defendants shall provide a copy of the certification to the Plaintiffs and the Monitor at the same time it is provided to the asset holder. If any asset holder contests or otherwise fails to honor a Corporate Defendant's certificate, the Corporate Defendant may apply to the Court for relief;

B.      Deny any Person access to any safe deposit box, commercial mailbox, or storage facility that is titled in the name of any Corporate Defendant, either individually or jointly, or otherwise subject to access by any Corporate Defendant;

C.      Provide Plaintiffs' counsel and the Monitor, within three (3) days of receiving a copy of this order, a sworn statement setting forth, for each asset or account covered by this Section:

        1)      The identification number of each such account or asset;

        2)      The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this order is served, and, if the account or other asset has been closed or

removed, the date closed or removed, the total funds removed in order to close the account, and the name of the Person to whom such account or other asset was remitted;

    3)    The identification of any safe deposit box, commercial mailbox, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.    Upon the request of Plaintiffs' counsel or the Monitor, promptly provide Plaintiffs' counsel and the Monitor with copies of all records or other Documents pertaining to each account or asset covered by this Section, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

## VIII.   FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, within eight days of service of this order upon them, shall prepare and deliver to Plaintiffs' counsel and the Monitor:

A.    Completed financial statements on the forms attached to this order as **Attachment B** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment C** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.    Completed **Attachment D** (IRS Form 4506, Request for Copy of a Tax Return) for each Individual and Corporate Defendant.

## IX.   FOREIGN ASSET DISCLOSURES

**IT IS FURTHER ORDERED** that within eight (8) days following the service of this order, each Defendant shall:

A.    Provide Plaintiffs' counsel and the Monitor with a full accounting, verified under oath and accurate as of the date of this order, of all assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.    Take all steps necessary to provide Plaintiffs' counsel and the Monitor access to all Documents and records relating to each Defendant that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this order as **Attachment E**.

## X.    CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiffs' counsel and the Monitor may obtain credit reports concerning any Corporate Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiffs' counsel and the Monitor.

## XI.    REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, who receive actual notice of this order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiffs' counsel and the Monitor with a written statement disclosing: (1) the name and domicile of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers,

directors, principals, managers, members, and employees; and (4) a detailed description of the business entity's intended activities.

## XII.    RECORDING OF LIVE SALES EVENTS AND RETENTION OF SALES DOCUMENTS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, IBOs, employees, independent contractors, and attorneys, all other Persons in active concert or participation with any of them, in connection with the advertising, marketing, promoting, or offering for sale of Defendants' Products, shall:

A.    Ensure all of Defendants' and IBOs' live sales events, including, but not limited to in-person meetings, telephone calls, and meetings conducted via videoconferencing applications such as Zoom and Microsoft Teams, are recorded and provided to Defendants;

B.    Ensure all sales Documents, including, but not limited to social media posts on platforms such as Instagram, Facebook, and YouTube, and communications on messaging applications (e.g., WhatsApp, Telegram, Discord), are provided to Defendants;

C.    Ensure all live programs offered as part of Defendants' Trading Training Services, such as "GoLive" sessions, are recorded and provided to Defendants; and

D.    Defendants shall retain copies of all recordings of live sales events and live training programs and all sales Documents collected pursuant to this Section for the duration of this order.

## XIII.    APPOINTMENT OF MONITOR

**IT IS FURTHER ORDERED** that Thomas W. McNamara is appointed as monitor of the Monitored Entities. The Monitor shall be solely the agent of this Court in acting as Monitor under this order.

XIV.    **DUTIES AND AUTHORITY OF THE MONITOR**

**IT IS FURTHER ORDERED** that the Monitor shall have the following duties and authority:

A.      Ensure that the Monitored Entities record live sales events, training programs, and collect sales Documents as described in Section XII of this order;

B.      Monitor the Monitored Entities' compliance with this order by identifying and reviewing the Monitored Entities' marketing materials and other Documents that reflect the Monitored Entities' marketing, advertising, promotion, offer for sale, or sale of their Products, including but not limited to, email, search engine advertising, Internet banner advertisements, websites, communications on messaging applications (e.g., WhatsApp, Telegram, Discord), online videos, webinars, social media, live sales events, recordings of live sales events, handouts, slide decks, workbooks, telephone calls (both live and recorded), call logs, call detail records, and reports. The Monitor will determine a reasonable number of materials and Documents (e.g., social media posts), live sales events, recordings of live sales events, and calls to review;

C.      Identify and review the Monitored Entities' records and financial transactions, including bank records, as they relate to the practices charged in the Complaint or Defendants' Products and ensure that all such related documents are preserved;

D.      Identify and inventory all assets of the Monitored Entities, including but not limited to:

          1)      Conducting an accounting of the Monitored Entities' assets; and

          2)      Opening and inventorying any safe deposit boxes, commercial mailboxes, or storage facilities titled in the name of any Monitored Entity, either individually or jointly, or subject to the access by any Monitored Entity;

E.      Review and authorize any Monitored Entities' request to:

          1)      Incur reasonable charges or cash advances on any credit or bank card issued in the name, individually or jointly, of any Monitored Entity or any

corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Monitored Entity or of which any Monitored Entity is an officer, director, member, or manager, including but not limited to corporate bank cards or corporate credit card accounts for which any Defendant is, or was on the date this order was signed, an authorized signor; and

2)  Make reasonable payments authorized by Section VI.A subject to the requirements set forth in Section VI.B.;

F.  Maintain accurate records of all receipts and expenditures of the Monitored Entities;

G.  Maintain accurate records of all receipts and expenditures incurred as Monitor;

H.  The Monitor shall have immediate, unfettered access to all information or Documents the Monitor deems necessary to carry out the Monitor's duties pursuant to this order, to the same extent as the Monitored Entities, themselves, are allowed by right, contract, or practice including, but not limited to:

1)  Access to all Documents pertaining to the Monitored Entities' business activities and finances related to the practices charged in the Complaint or Defendants' Products wherever located and in whomever's custody or control;

2)  Access to all property or premises in possession of, owned by, or under the control of the Monitored Entities related to the practices charged in the Complaint or Defendants' Products, wherever located;

3)  The right to interview any current or former employee, independent contractor, principal, owner, manager or member of the Monitored Entities, including Individual Defendants, to obtain and copy pertinent information including, but not limited to, the name, home address, Social

Security number, job description, company history, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee;

4) The right to interview any Monitored Entity's current or former officer, manager, independent contractor, subcontractor, financial institution, vendor, telecommunications provider, agent, service bureau, or other entity involved in the provision of any services from, to, or on behalf of the Monitored Entities, including Individual Defendants;

5) Access to all Documents of any officer, manger, independent contractor, employee, or agent of any Monitored Entity pertaining to the Monitored Entities' business activities and finances related to the practices charged in the Complaint or Defendants' Products;

6) The right to copy or image all Documents that the Monitor deems necessary to carry out the Monitor's duties pursuant to this order, including any documents in the custody, or control of the Individual Defendants; and

7) The right to issue subpoenas to obtain Documents and records pertaining to the Monitored Entities, and conduct discovery in this action that the Monitor deems necessary to carry out the Monitor's duties pursuant to this order; and

I.    The Monitor is authorized to choose, engage, and employ attorneys, investigators, accountants, appraisers, and other independent contractors and technical specialists, as the Monitor deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this order. The Monitor is also authorized to obtain the assistance of the U.S. Marshal's office and other federal, state, and local law enforcement officers as the Monitor deems necessary to fulfill the duties set forth in this

Section. If requested by the Monitor, the United States Marshal shall provide, and state or local law enforcement may provide, appropriate and necessary assistance to the Monitor to implement this order and is authorized to use any necessary and reasonable force to do so.

## XV.    REPORTING BY THE MONITOR

**IT IS FURTHER ORDERED** that by October 6, 2025, the Monitor is directed to report to this Court on the Monitor's findings, including:

A.    The Monitored Entities' compliance with this order;

B.    An accounting of the Monitored Entities' financial transactions as to they relate to the practices charged in the Complaint or Defendants' Products;

C.    A description of the Monitored Entities' corporate structures including all parents, subsidiaries (whether wholly or partially owned), divisions (whether incorporated or not), affiliates, branches, charters, joint ventures, partnerships, franchises, operations under assumed names, and all ownership interests of the Monitored Entities;

D.    A determination of whether the Monitored Entities can be continued legally and profitably;

E.    The Monitor shall make subsequent reports on the Monitored Entities' compliance with this order every thirty days after its initial report for the duration of this order.

## XVI.    PROVISION OF INFORMATION TO MONITOR

**IT IS FURTHER ORDERED** that Defendants, their agents, and IBOs shall provide to the Monitor, immediately upon request, but not less than 72 hours, without need of any subpoena or further order, the following:

A.    A list of all Documents pertaining to the Monitored Entities' Earnings Claims and other representations related to the marketing, advertising, promotion, offer for sale, or sale of Defendants' Products, including any such Documents belonging to other Persons whose interests are under the direction, custody, or control, or in the possession, of the Monitored entities;

B.      A list of all assets and accounts of the Monitored Entities, including assets of the Monitored Entities that are held in any name other than the name of a Monitored Entity, or by any Person other than a Monitored Entity;

C.      A list of all assets and Documents belonging to other Persons whose interests are under the direction, custody, or control, or in the possession, of the Monitored Entities;

D.      A list of all locations where Documents of the Monitored Entities are located, and the means to access such Documents with twenty-four hours of the Monitor's request;

E.      Access to all Documents of the Monitored Entities including, but not limited to, books and records of accounts, all financial and accounting records, including cryptocurrency wallets, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title Documents and other papers that relate to the practices charged in the complaint or Defendants' Products;

F.      Access to all computers, electronic devices, mobile devices, cryptocurrency wallets, and machines (onsite or remotely), and any cloud account (including specific method to access account), electronic file in any medium, or other data in whatever form used to conduct the business of the Monitored Entities;

G.      Copies of all keys, codes, user names and passwords necessary to gain or to secure access to any assets or Documents of the Monitored Entities including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

H.      A list of all agents, IBOs, employees, independent contractors, officers, attorneys, servants, and those Persons in active concert and participation with the Monitored Entities, or what have been associated or done business with the Monitored Entities since January 1, 2018.

## XVII.   COOPERATION WITH THE MONITOR

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, IBOs, employees and attorneys, all other Persons in active concert of participation with any of them,

and all other Persons or entities served with a copy of this order shall fully cooperate with and assist the Monitor. This cooperation and assistance shall include, but is not limited to, providing information to the Monitor that the Monitor deems necessary to exercise the authority and discharge the responsibilities of the Monitor under this order, providing any keys, codes, user names, and passwords required to access any computers, electronic devices, mobile devices, cryptocurrency wallets, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; informing the Monitor of all Persons who owe money to any Monitored Entity, transferring funds at the Monitor's direction; and producing Documents related to the assets and sales and refunds of the Monitored Entities.

## XVIII. NON-INTERFERENCE WITH THE MONITOR

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, IBOs, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, and any other Persons served with a copy of this order, are hereby restrained and enjoined from directly or indirectly;

A.      Interfering with the Monitor's efforts to carry out its duties under this order, including but not limited to interfering with the Monitor's efforts to review Documents or claims related to the Monitored Entities' marketing, advertising, promotion, offer for sale of the Defendants' Products;

B.      Interfering with the Monitor's efforts to inventory or review the assets or Documents of the Monitored Entities;

C.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of the Monitored Entities;

D.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or

custody of, or in which an interest is held or claimed by, the Monitored Entities except as provided in Section VI;

E. Refusing to cooperate with the Monitor or the Monitor's duly authorized agents in the exercise of their duties or authority under any order of this Court; and

F. Failing to provide any assistance or information requested by the Monitor in connection with the performance of the Monitor's duties under this order.

**XIX. COMPENSATION OF THE MONITOR**

**IT IS FURTHER ORDERED** that the Monitor and all personnel hired by the Monitor as herein authorized, including counsel to the Monitor and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Monitored Entities. The Monitor shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more later than October 20, 2025. The Monitor shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

**XX. IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS**

**IT IS FURTHER ORDERED** that:

A. To ensure the preservation of assets and evidence relevant to this action and to expedite discovery, the Plaintiffs and the Monitor, and their representatives, agents, contractors, and assistants, shall have immediate access to the business premises, records, and storage facilities, owned, controlled, or used by the Monitored Entities. Such locations include, but are not limited to 3750 South Las Vegas Boulevard., Apartment 2808, Las Vegas, Nevada 89109 and 3098 W. Executive Parkway, Suite 150, Lehi, Utah 84043; and any offsite location or commercial mailbox used by the Monitored Entities. The Monitor may exclude Defendants,

Monitored Entities, and their employees from the business premises during the immediate access;

       B.     Plaintiffs and the Monitor, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Monitored Entities' premises in order that they may be inspected, inventoried, and copied. Plaintiffs shall return any removed materials to the Monitor within five days of completing inventorying and copying, or such time as is agreed upon by Plaintiffs and the Monitor;

       C.     Plaintiffs' and the Monitor's access to the Monitored Entities' Documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiffs or the Monitor;

       D.     Plaintiffs and the Monitor, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this order;

       E.     If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Monitored Entities are at a location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and Monitored Entities shall produce to the Monitor all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access. In order to prevent the destruction of computer data, upon service of this order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

       F.     If any communications or records of any Monitored Entity are stored with an Electronic Data Host, such Entity shall, immediately upon receiving notice of this order, provide the Monitor with the username, passwords, and any other login credential needed to access the

communications and records, and shall not attempt to access, or cause a third-party to attempt

to access, the communications or records.

## XXI.    DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this

Order to each franchisee, affiliate, telemarketer, marketer, IBO, sales entity, successor, assign,

member, officer, director, employee, agent, independent contractor, client, attorney, spouse,

subsidiary, division, and representative of themselves, and must, by August 29, 2025, provide

Plaintiffs and the Monitor with a sworn statement that this provision of the order has been

satisfied, which statement shall include the names, physical addresses, phone number, and email

addresses of each such Person who received a copy of the order. Furthermore, Defendants shall

not take any action that would encourage officers, agents, IBOs, members, directors, employees,

salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns,

franchisees, or other Persons in active concert or participation with any of them to disregard this

order or believe that they are not bound by its provisions.

## XXII.    EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of Fed. R. Civ. P.

26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 33, 34, and 45, Plaintiffs

and the Monitor are granted leave, at any time after service of this order, to conduct limited

expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of

Defendants' assets; (2) the nature, location, and extent of Defendants' business transactions and

operations; (3) Documents reflecting Defendants' business transactions and operations; or (4)

compliance with this order. The limited expedited discovery set forth in this Section shall

proceed as follows:

A.    Plaintiffs and the Monitor may take the deposition of parties and non-parties.

Five days' notice shall be sufficient, with no weekend or holiday depositions except to

accommodate limited availability of witness. The limitations and conditions set forth in Rules

30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone, video conferencing platform (e.g., Zoom or Microsoft Teams), or other remote electronic means;

B.    Plaintiffs and the Monitor may serve upon parties requests for production of Documents or inspection that require production or inspection within eight days of service;

C.    Plaintiffs and the Monitor may serve upon parties up to five Interrogatories (total) in a five-day period that require response within five days after Plaintiffs or the Monitor serve such interrogatories;

D.    Plaintiffs and the Monitor may serve subpoenas upon non-parties that direct production or inspection within eight (8) days of service;

E.    Plaintiffs and Monitor may use all lawful means, including posing, through its representatives as consumers or other individuals or entities, to Defendants or any entity affiliated with Defendants, without the necessity of identification or prior notice;

F.    Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

G.    Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure but must comply with the Local Rules of this Court. The parties must meet and confer regarding objections to or refusals to comply with any expediated discovery request by Plaintiffs or the Monitor within three days of the request. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Federal Rules of Civil Procedure 26(d) & (f).

H.    The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XXIII. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this order, as well as all other filings in this case (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiffs, by any law enforcement agency, or by private process server, upon any Defendant or any Person (including any financial institution) that may have possession, custody or control of any asset or Document of any Defendant, or that may be subject to any provision of this order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXIV.   CORRESPONDENCE AND SERVICE ON PLAINTIFFS

**IT IS FURTHER ORDERED** that, for the purpose of this order, all correspondence and service of pleadings on Plaintiffs shall be addressed to:

Laura C. Basford
Thomas M. Biesty
J. Ronald Brooke, Jr.
Joshua A. Doan
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
Email: lbasford@ftc.gov; tbiesty@ftc.gov; jbrooke@ftc.gov; jdoan@ftc.gov

Lucas J. Tucker
Samantha B. Feeley
State of Nevada
Office of the Attorney General
Bureau of Consumer Protection
8945 W. Russell Road, #204
Las Vegas, Nevada 89148
Email: ltucker@ag.nv.gov; sfeeley@ag.nv.gov

## XXV.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that, until further notice or order, this court will retain jurisdiction of this matter for all purposes.

Dated: August 18, 2025

_____
Cristina D. Silva
United States District Judge