# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Federal Trade Commission, et al, | Case No. 2:25-cv-00760-CDS-NJK |
| Plaintiff | **Second Modified Preliminary Injunction to Appoint Temporary Receiver** |
| v. | |
| International Markets Live, Inc. et al., | [ECF No. 169] |
| Defendants | |

On August 11, 2025, the court granted the plaintiffs', Federal Trade Commission and the State of Nevada, motion for a preliminary injunction, asset freeze, appointment of a court Monitor, and other relief. Prelim. Inj., ECF No. 104. A modified version of that preliminary injunction was entered by the court on August 18, 2025. Mod. Prelim. Inj., ECF No. 111. On October 16, 2025, the FTC filed an emergency motion to modify the preliminary injunction to convert the court-appointed Monitor into a Receiver, and other related relief. Mot., ECF No. 150. In support of that motion, the plaintiffs allege that defendants International Markets Live, Inc., Assiduous, Inc., IM Mastery Academy Ltd., ("Corporate Defendants") and Christopher Terry and Isis Terry ("Individual Defendants"), have been hiding, and are likely to dissipate, assets, in violation of the preliminary injunction this Court has previously placed them under. The plaintiffs, therefore, argue that absent an asset freeze and receivership to control all the defendants' assets, the defendants will take further steps to hide and dissipate assets, thus limiting the pool of assets potentially available for redress to consumers in this case should the plaintiffs prevail.

The court held a hearing on the emergency motion (ECF No. 150) on October 21, 2025. Mins. of proc., ECF No. 167. At the conclusion of that hearing, the court granted FTC's motion in part and converted the already-appointed Monitor, Thomas McNamara, into a Temporary Receiver. *Id.* On Friday, October 24, 2025, the Temporary Receiver filed an emergency motion to

enter a written order confirming the court's October 21, 2025, decision to convert the already-entered preliminary injunction (ECF No. 111), into a preliminary injunction designated as, and giving the fully powers of an equity receiver, to the Temporary Receiver.[1] *See* Emerg. mot., ECF No. 169. Having considered the motion, I hereby grant the plaintiffs' motion for a written order and issue this Second Modified Preliminary Injunction appointing a Temporary Receiver in this action.

FINDINGS

The court, having considered the plaintiffs' Emergency Motion to Modify Preliminary Injunction, Impose an Asset Freeze on All Defendants, and Convert Monitor to Receiver, declarations, exhibits, and the memorandum of points and authorities filed in support thereof (ECF No. 150), finds that:

A.     This court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.     On May 1, 2025,  the plaintiffs filed their Complaint for Permanent Injunction, Monetary Judgment, and Other Relief ("complaint") pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and the Deceptive Trade provisions of Chapter 598 of the Nevada Revised Statutes, §§ 598.0915(5) and 598.0923(1)(c). ECF Nos. 1, 32.

C.     The plaintiffs have previously reached settlements with defendants Global Dynasty Network, LLC, Jason Brown, Matthew Rosa, Alex Morton, and Brandon Boyd, and this court has entered stipulated final orders as to those defendants. *See* ECF Nos. 100, 114, and 123.

---

[1] The hearing to address the request to appoint a permanent receiver is set for November 5, 2025. ECF No. 167.

D.      The plaintiffs also applied for a preliminary injunction, limited asset freeze over the Corporate Defendants, appointment of a monitor, and other relief, which this court granted on August 12, 2025, and modified on August 18, 2025. ECF Nos. 104, 111 ("PI").

E.      On October 6, 2025, the Monitor filed his Preliminary Report, in which he writes: "Defendants—both the Monitored Entities and the Individual Defendants themselves—have materially hindered our ability to complete the Monitor duties assigned by the PI. Defendants have not provided unfettered and immediate access to IML records and documents required by the PI and necessary for the Monitor team to carry out their duties. Instead, Defendants have dribbled materials in over the last two months. The Terrys have been overtly uncooperative and have failed to provide fulsome and truthful Financial Disclosures. While both sat for depositions, their testimony lacks credibility and is directly contradicted by documents compiled by the Monitor team. . . . Their testimony also demonstrates a disrespect for the Court's Orders, and, it appears, an obstinate refusal to abide by them." ECF No. 140-1 at 5.

F.      Defendants' actions following the PI establish that they will likely continue to hide and dissipate assets if not relieved of control of those assets. In particular, as set forth in the Monitor's Preliminary Report, the defendants have:

(1)      Failed to produce the majority of the business records required by the PI (*id.* at 10);

(2)      Failed to provide complete Financial Disclosures required by the PI (*id.* at 8);

(3)      Misrepresented their assets in their Financial Disclosure forms, including by claiming that Defendant Isis Terry's engagement ring was worth $10,000 when it had been valued at $2,874,482 (*id.* at 9 n.9);

(4)      Failed to provide the Foreign Asset Disclosures required by the PI (*id.* at 10); and

(5)     Provided deposition testimony that demonstrates a disrespect for this court's orders (*id.* at 5).

G.     There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and Chapter 598 of the Nevada Revised Statutes, that ROSCA Defendants, as defined below, have engaged in and are likely to engage in acts or practices that violate Section 4 of ROSCA, 15 U.S.C. § 8403, and that  the plaintiffs are therefore likely to prevail on the merits of this action.

H.     As demonstrated by documentation of Defendants' advertisements, documents and information provided by Defendants to the plaintiffs and submitted in support of Plaintiffs' Motion for Preliminary Injunction, testimony from Defendants' employees, consumer declarations, a report by  the plaintiffs' survey expert, and the additional documentation filed by the plaintiffs,  the plaintiffs have established a likelihood of success in showing that Defendants have: (1) made false or unsubstantiated claims regarding consumers' ability to earn substantial income trading in the financial markets, including consumers' ability to do so even if they lacked trading experience, significant time, or investable capital; (2) made false claims that their instructors were audited by the FTC; (3) made false or unsubstantiated claims regarding consumers' ability to earn substantial income from Defendants' Business Venture; and (4) made material misrepresentations and false and misleading statements while engaged in telemarketing.  The plaintiffs have also established a likelihood of success in showing that ROSCA Defendants have: (i) failed to clearly and conspicuously disclose all material terms of their transactions before obtaining purchasers' billing information and (ii) failed to obtain purchasers' express informed consent before obtaining purchasers' billing information.

I.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, the TSR, and the Nevada Revised Statutes,

and ROSCA Defendants' ongoing violations of ROSCA, unless Defendants and ROSCA Defendants are restrained and enjoined by order of this Court.

J.    There is good cause to believe that immediate and irreparable damage to the court's ability to grant effective final relief for consumers – including monetary restitution, rescission, or refunds –will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this court.

K.    Good cause exists for appointing a temporary receiver over the Receivership Entities, freezing Defendants' assets, and requiring Defendants to repatriate their foreign assets.

L.    Weighing the equities and considering the plaintiffs' likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze on Defendants' assets, the appointment of a temporary receiver, foreign asset repatriation, and other relief is in the public interest.

M.    This court has authority to issue this order pursuant to Section 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b) and 57b; Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

N.    No security is required of any agency of the United States for the issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this order, the following definitions shall apply:

A.    **"Business Venture"** means any written or oral business arrangement, however denominated, whether or not covered by 16 C.F.R. Part 437, that consists of providing payment or other consideration for the right or means to offer, sell, or distribute Defendants' products or services.

B.    **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is easily noticeable (i.e., difficult to miss) and easily understandable by ordinary consumers, including in all of the following ways:

(1)    In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

(2)    A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

(3)    An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

(4)    In any communication using an interactive electronic medium, such as the Internet, an app, or software, the disclosure must be unavoidable. A disclosure is not Clear and Conspicuous if a consumer must take any action, such as clicking on a hyperlink or hovering over an icon, to perceive and understand it.

(5)    The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

(6)    The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

(7)    The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

(8)    When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes members of that group.

C.    **"Corporate Defendants"** means International Markets Live, Inc., also d/b/a IYOVIA, iMarketsLive, IM Mastery Academy, and IM Academy; IM Mastery Academy Ltd., f/k/a International Markets Live Ltd.; and Assiduous, Inc., and their affiliates, subsidiaries, successors and assigns.

D.    **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

E.    **"Document"** is synonymous in meaning and equal in scope to the use of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

F.    **"Electronic Data Host"** means any Person in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

G.    **"Earnings Claim"** means any representation to consumers, specific or general, about income, financial gains, percentage gains, profit, net profit, gross profit, or return on investment. Earnings Claims include, but are not limited to: (a) the details of specific profitable trades, whether actual or hypothetical; (b) references to quitting one's job, not having to work, financial freedom, or living off of income from trading in any financial market or multi-level marketing; (c) references to increased savings; (d) references to purchases, including a home, vehicle, boat, vacation, jewelry, luxury clothing and accessories, or travel; (e) claims that consumers will not lose money if they use a particular trading strategy; (f) claims that profits are likely, probable, or the "mathematical" result of applying a particular trading strategy; (g) any statements, claims, success stories, endorsements, or testimonials about the performance or profitability of representatives, endorsers, instructors or customers; and (h) any representation, even hypothetical, of how much money a consumer could or would earn.

H.    **"Independent Business Owner"** or **"IBO"** means any individual or entity who is participating in a Business Venture.

I.    **"Individual Defendants"** means Christopher Terry, a/k/a Chris Terry, and Isis Terry, f/k/a Isis De La Torre.

J.    **"Negative Option Feature"** means a provision of a contract under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the negative option seller or provider as acceptance (or continuing acceptance) of the offer, including, but not limited to: an automatic renewal; a continuity plan; a free-to-pay conversion or fee-to-pay conversion; or a pre-notification negative option plan.

K.    **"Person"** means any natural person or any entity, corporation, partnership, or association of persons.

1     L.     **"Primary Personal Residence"** means, with respect to each Individual
2  Defendant, the address each Individual Defendant disclosed on their Financial Statement of
3  Individual Defendant as their "Current Address of Primary Residence." *See* ECF No. 140-2 at 82;
4  ECF No. 140-2 at 101.

5     M.     **"Product"** means any Business Venture or Trading Training Service sold by
6  Defendants.

7     N.     **"Temporary Receiver"** means the temporary receiver appointed in Section XII of
8  this order and any deputy receivers that shall be named by the temporary receiver.

9     O.     **"Receivership Entities"** means Corporate Defendants as well as any other entity
10  that has conducted any business related to the marketing or sale of Defendants' Products,
11  including receipt of assets derived from any activity that is the subject of the Complaint in this
12  matter, and that the Temporary Receiver determines is controlled or owned by any Defendant.
13  This includes, but is not limited to, the following entities previously determined by the Monitor
14  to be a Monitored Entity subject to the August 18, 2025 Modified Preliminary Injunction (ECF
15  No. 111):

16     (1)    Afflatus Holdings, LLC;
17     (2)    Auspicious Irrevocable Trust dated February 10, 2019;
18     (3)    Dominant Consulting Group, LLC;
19     (4)    Felicitous Charm, LLC;
20     (5)    Harmonic Waves Holding LLC;
21     (6)    Reverie State LLC;
22     (7)    Terra Firma Development, LLC;
23     (8)    Orphic LLC;
24     (9)    Majestic Positano LLC;
25     (10)   Royal Roma LLC;
26     (11)   St. Croix, LLC;

(12)  City View Heights, LLC;

(13)  Big Agency EAU Marketing L.L.C.;

(14)  RealInvest GCC Active Limited;

(15)  Shauna DWC-LLC;

(16)  Rainmaker Capital Investments L.L.C.;

(17)  Effloresce World LLC;

(18)  Terra Firma Development and Construction, LLC;

(19)  Terra Firma Design Build, LLC;

(20)  Beach Music, LLC; and

(21)  Cityview Ridge, LLC.

P.  **"Receivership Estate"** means:

(1)  All assets valued at $1,000 or more, as determined by the Temporary Receiver, owned or controlled, directly or indirectly, by the Individual Defendants as of the time this order is entered;

(2)  All Receivership Entities; and

(3)  All Documents related to Items 1) and 2) above.

Q.  **"ROSCA Defendants"** means Christopher Terry, a/k/a Chris Terry, Isis Terry, f/k/a Isis De La Torre, and International Markets Live, Inc., also d/b/a IYOVIA, iMarketsLive, IM Mastery Academy, and IM Academy.

R.  **"Seller"** means any Person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

S.  **"Telemarketer"** means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

1    T.    **"Telemarketing"** means any plan, program, or campaign which is conducted to

2  induce the purchase of goods or services by use of one or more telephones, and which involves a

3  telephone call, whether or not covered by the Telemarketing Sales Rule.

4    U.    **"Trading Training Service"** means any product or service, including any program

5  or plan, that is represented, expressly or by implication, to train or teach a consumer how to

6  trade in any financial market, including the foreign exchange, binary options, cryptocurrency, or

7  stock markets.

8                                    **ORDER**

9  **I.    PROHIBITED BUSINESS ACTIVITIES**

10    IT IS THEREFORE ORDERED that Defendants, Defendants' officers, agents, IBOs,

11  employees, and attorneys, and all other Persons in active concert or participation with any of

12  them, who receive actual notice of this order by personal service or otherwise, whether acting

13  directly or indirectly, in connection with the advertising, marketing, promoting, or offering for

14  sale of any goods or services, are preliminarily restrained and enjoined from:

15    A.    Making any Earnings Claim, expressly or by implication, unless the Earnings

16  Claim is non-misleading, and, at the time such claim is made, Defendants: (1) have a reasonable

17  basis for the claim; (2) have in their possession written materials that substantiate that the

18  claimed earnings are typical for consumers similarly situated to those to whom the claim is

19  made; and (3) make the written substantiation available upon request to the consumer,

20  potential purchaser, the Temporary Receiver, or the FTC;

21    B.    Misrepresenting or assisting others in misrepresenting, expressly or by

22  implication:

23            (1)    The level of experience required for consumers to effectively use the good

24                or service;

25            (2)    The time or effort required for consumers to effectively use the good or

26                service;

    (3)     The amount of capital required for consumers to effectively use the good or service;

    (4)     That any government entity is auditing or reviewing the good or service or representations regarding the good or service;

    (5)     Any material aspect of the nature or terms of a refund, cancellation, or exchange policy for the good or service; or

    (6)     Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

C.    Offering any good or service with a Negative Option Feature, without first:

    (1)     Disclosing Clearly and Conspicuously, and immediately adjacent to the means of recording the consumer's consent for the Negative Option Feature, all material terms of the transaction before obtaining the consumer's billing information; and

    (2)     Obtaining the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for the transaction.

D.    In connection with Telemarketing of any goods or services:

    (1)     Providing substantial assistance or support to any Seller or Telemarketer when that Person knows or should know that the Seller or Telemarketer is engaged in any action that violates §§ 310.3(a), (c) or (d), or § 310.4 of the TSR; or

    (2)     Violating any provision of the TSR, 16 C.F.R. Part 310, attached as **Attachment A**.

## II.  PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, IBOs, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any Person that any Defendant obtained in connection with any activity that pertains to the subject matter of this order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## III.  PRESERVATION OF RECORDS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, IBOs, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.    Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' assets.

IV.    **ASSET FREEZE OVER DEFENDANTS**

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets, wherever located, including outside the United States, that are:

(1)    Owned or controlled, directly or indirectly, by any Defendant;

(2)    Held, in part or in whole, for the benefit of any Defendant;

(3)    In the actual or constructive possession of any Defendant; or

(4)    Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant.

B.      Opening or causing to be opened any safe deposit boxes, commercial mailboxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Temporary Receiver acting pursuant to its authority under this order;

C.      Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which

any Individual Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this order was signed, an authorized signor; or

       D.     Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

      The assets affected by this Section includes: (1) all assets of the Defendants as of the time this order is entered; and (2) assets obtained by the Defendants after this order is entered if those assets are derived from any activity that is the subject of the complaint in this matter or that is prohibited by this order.

**V.    DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES**

      IT IS FURTHER ORDERED that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or Person who receives actual notice of this order (by service or otherwise) that (a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any asset that has been: owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; (b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or (c) has extended credit to any Defendant, including through a credit card account, shall:

A.    Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, refund, chargeback, or other disposal of any such Document or asset of any Defendant, as well as all Documents or other property related to such assets, except by further order of this court.

Provided, however, this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established prior to entry of this order, up to the pre-existing credit limit.

B.    Deny any Person access to any safe deposit box, commercial mailbox, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.    Provide Plaintiffs' counsel and the Temporary Receiver, within three days of receiving a copy of this order, a sworn statement setting forth, for each asset or account covered by this Section:

        (1)    The identification number of each such account or asset;

        (2)    The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the Person to whom such account or other asset was remitted;

        (3)    The identification of any safe deposit box, commercial mailbox, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.      Upon the request of the plaintiffs' counsel or the Temporary Receiver, promptly provide the plaintiffs' counsel and the Temporary Receiver with copies of all records or other Documents pertaining to each account or asset covered by this Section, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

## VI.    FINANCIAL DISCLOSURES

IT IS FURTHER ORDERED that each Defendant, within eight days of service of this order upon them, must prepare and deliver to the plaintiffs' counsel and the Temporary Receiver:

A.      Completed financial statements on the forms attached to this order as **Attachment B** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment C** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.      Completed **Attachment D** (IRS Form 4506, Request for Copy of a Tax Return) for each Individual and Corporate Defendant.

## VII.   FOREIGN ASSET REPATRIATION

IT IS FURTHER ORDERED that within eight days following the service of this order, each Defendant must:

A.      Provide the plaintiffs' counsel and the Temporary Receiver with a full accounting, verified under oath and accurate as of the date of this order, of all assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or

indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.    Take all steps necessary to provide the plaintiffs' counsel and the Temporary Receiver access to all Documents and records relating to each Defendant that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this order as **Attachment E**;

C.    Transfer to the territory of the United States all Documents and assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.    The same business day as any repatriation, (1) notify the Temporary Receiver and counsel for the plaintiffs of the name and location of the financial institution or other entity that is the recipient of such Documents or assets; and (2) serve this order on any such financial institution or other entity.

**VIII.    NON-INTERFERENCE WITH REPATRIATION**

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by this order, including, but not limited to:

A.    Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has

1  occurred under the terms of a foreign trust agreement until such time that all Defendants' assets

2  have been fully repatriated pursuant to this order; or

3          B.          Notifying any trustee, protector or other agent of any foreign trust or other

4  related entities of either the existence of this order, or of the fact that repatriation is required

5  pursuant to a court order, until such time that all Defendants' assets have been fully repatriated

6  pursuant to this order.

7  **IX.    CONSUMER CREDIT REPORTS**

8          IT IS FURTHER ORDERED that the plaintiffs' counsel and the Temporary Receiver may

9  obtain credit reports concerning any Defendant pursuant to Section 604(a)(1) of the Fair Credit

10  Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting

11  agency from which such reports are requested shall provide them to the plaintiffs' counsel and

12  the Temporary Receiver.

13  **X.    REPORT OF NEW BUSINESS ACTIVITY**

14          IT IS FURTHER ORDERED that Defendants, who receive actual notice of this order,

15  whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from

16  creating, operating, or exercising any control over any business entity, whether newly formed or

17  previously inactive, including any partnership, limited partnership, joint venture, sole

18  proprietorship, or corporation, without first providing the plaintiffs' counsel and the Temporary

19  Receiver with a written statement disclosing: (1) the name and domicile of the business entity;

20  (2) the address and telephone number of the business entity; (3) the names of the business

21  entity's officers, directors, principals, managers, members, and employees; and (4) a detailed

22  description of the business entity's intended activities.

23  **XI.    RECORDING OF LIVE SALES EVENTS AND RETENTION OF SALES
24          DOCUMENTS**

25          IT IS FURTHER ORDERED that Defendants and their officers, agents, IBOs, employees,

26  independent contractors, and attorneys, all other Persons in active concert or participation with

any of them, in connection with the advertising, marketing, promoting, or offering for sale of Defendants' Products, shall:

      A.      Ensure all of Defendants' and IBOs' live sales events, including, but not limited to in-person meetings, telephone calls, and meetings conducted via videoconferencing applications such as Zoom and Microsoft Teams, are recorded and provided to Defendants;

      B.      Ensure all sales Documents, including, but not limited to social media posts on platforms such as Instagram, Facebook, and YouTube, and communications on messaging applications (e.g., WhatsApp, Telegram, Discord), are provided to Defendants;

      C.      Ensure all live programs offered as part of Defendants' Trading Training Services, such as "GoLive" sessions, are recorded and provided to Defendants; and

      D.      Defendants must retain copies of all recordings of live sales events and live training programs and all sales Documents collected pursuant to this Section for the duration of this order.

## XII.     APPOINTMENT OF TEMPORARY RECEIVER

      IT IS FURTHER ORDERED that Thomas W. McNamara is appointed as temporary receiver of the Receivership Estate and with full powers of an equity receiver. The Temporary Receiver is solely the agent of this court in acting as Temporary Receiver under this order.

## XIII.    DUTIES AND AUTHORITY OF TEMPORARY RECEIVER

      IT IS FURTHER ORDERED that the Temporary Receiver is directed and authorized to accomplish the following:

      A.      Assume full control of Receivership Entities by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B.      Take exclusive custody, control, and possession of the assets of the Receivership Estate, wherever situated. The Temporary Receiver shall have full power to divert mail and to sue for, collect, receive, take possession of, hold, and manage the Receivership Estate. Provided, however, that the Temporary Receiver will only open mail delivered to the Individual Defendants' Primary Personal Residences if, based on the envelope, it appears to relate to financial relationships;

C.      Take exclusive custody, control, and possession of all Documents or assets associated with credits, debits, or charges made on behalf of the Receivership Estate, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

D.      Conserve, hold, manage, and prevent the loss of all assets of the Receivership Estate, and perform all acts necessary or advisable to preserve the value of those assets. The Temporary Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Estate. The Temporary Receiver shall have full power to sue for, collect, and receive, all assets of the Receivership Estate and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Estate. Provided, however, that the Temporary Receiver shall not attempt to collect any amount from a consumer if the Temporary Receiver believes the consumer's debt to the Receivership Estate has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior court approval;

E.      Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Estate, and perform all acts necessary or advisable to preserve such Documents. The Temporary Receiver shall: divert mail; preserve all Documents of the Receivership Estate that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts), by changing usernames,

passwords or other log-in credentials; take possession of all electronic Documents of the Receivership Estate stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely;

F.    Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this order;

G.    Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Temporary Receiver. The Temporary Receiver shall apply to the court for prior approval of any payment of any debt or obligation incurred by the Receivership Estate prior to the date of entry of this order, except payments that the Temporary Receiver deems necessary or advisable to secure assets of the Receivership Estate, such as rental payments;

H.    Take all steps necessary to secure the personal and business premises of the Receivership Estate. Such steps may include, but are not limited to, any of the following, as the Temporary Receiver deems necessary or advisable: (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Temporary Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises Documents or assets of the Receivership Entities. Provided, however, that absent approval from this court, the Temporary Receiver may not evict Individual Defendants from their respective Primary Personal Residences

unless they are taking steps to hide, dissipate, destroy, or abscond with assets or Documents within the Receivership Estate. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Temporary Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Temporary Receiver, the United States Marshal will provide appropriate and necessary assistance to the Temporary Receiver to implement this order and is authorized to use any necessary and reasonable force to do so;

   I. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendant, and to provide access to all such web page or websites to the plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

   J. Enter into and cancel contracts and purchase insurance as advisable or necessary;

   K. Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

   L. Make an accounting, as soon as practicable, of the assets and financial condition of the Receivership Estate and file the accounting with the court and deliver copies thereof to all parties;

   M. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Estate, or to carry out the Temporary Receiver's mandate under this order, including but not limited to, actions challenging fraudulent or voidable transfers;

   N. Issue subpoenas to obtain Documents and records pertaining to the Receivership Estate, and conduct discovery in this action on behalf of the Receivership Estate, in addition to obtaining other discovery as set forth in this order;

O.      Open one or more bank accounts at designated depositories for funds of the Receivership Estate. The Temporary Receiver shall deposit all funds of the Receivership Estate in such designated accounts and shall make all payments and disbursements from the Receivership Estate from such accounts. The Temporary Receiver shall serve copies of monthly account statements on all parties;

P.      Maintain accurate records of all receipts and expenditures incurred as Temporary Receiver;

Q.      Allow the plaintiffs' representatives, agents, and assistants, as well as Defendants' representatives and Defendants themselves, reasonable access to the premises of the Receivership Entities or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

R.      Allow the plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Estate;

S.      Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

T.      Suspend business operations of the Receivership Entities if in the judgment of the Temporary Receiver such operations cannot be continued legally and profitably;

U.      If the Temporary Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Temporary Receiver's determination by filing a motion with the court. Provided, however, that the Temporary Receiver may delay providing such notice until the Temporary Receiver has established control of the nonparty entity and its assets and records, if the Temporary Receiver

24

determines that notice to the entity or the parties before the Temporary Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Temporary Receiver's control of the entity; and

V.      If in the Temporary Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.

XIV.    TRANSFER OF RECEIVERSHIP PROPERTY TO TEMPORARY RECEIVER

IT IS FURTHER ORDERED that Defendants and any other person, with possession, custody or control of assets of, or Documents relating to, the Receivership Entities or the Individual Defendants shall, upon notice of this order by personal service or otherwise, fully cooperate with and assist the Temporary Receiver in taking and maintaining possession, custody, or control of the assets and Documents of the Receivership Entities and the Individual Defendants and immediately transfer or deliver to the Temporary Receiver possession, custody, and control of, the following:

A.      All assets held by or for the benefit of the Receivership Estate;

B.      All Documents or assets associated with credits, debits, or charges made on behalf of any Receivership Entity or Individual Defendant, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.      All Documents of or pertaining to the Receivership Entities;

D.    All computers, electronic devices, mobile devices and machines used to conduct the business of the Receivership Entities;

E.    All assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.    All keys, codes, user names and passwords necessary to gain or to secure access to any assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any asset or Document, or otherwise fails to comply with any provision of this Section, the Temporary Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XV.    PROVISION OF INFORMATION TO TEMPORARY RECEIVER

IT IS FURTHER ORDERED that Defendants shall immediately provide to the Temporary Receiver:

A.    A list of all assets and accounts of the Receivership Entities and the Individual Defendants that are held in any name other than the name of a Receivership Entity, or by any Person or entity other than a Receivership Entity;

B.    A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities or the Individual Defendants, or who have been associated or done business with the Receivership Entities or the Individual Defendants since January 1, 2018; and

C.    A description of any Documents covered by attorney-client privilege or attorney work product, including files where such Documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

**XVI.    COOPERATION WITH THE TEMPORARY RECEIVER**

IT IS FURTHER ORDERED that Defendants, Receivership Entities, Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property of or records relating to the Receivership Estate who receive actual notice of this order shall fully cooperate with and assist the Temporary Receiver. This cooperation and assistance shall include, but is not limited to, providing information to the Temporary Receiver that the Temporary Receiver deems necessary to exercise the authority and discharge the responsibilities of the Temporary Receiver under this order; providing any keys, codes, user names and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Temporary Receiver; and transferring funds at the Temporary Receiver's direction and producing records related to the assets and sales of the Receivership Estate.

**XVII.   NON-INTERFERENCE WITH THE TEMPORARY RECEIVER**

IT IS FURTHER ORDERED that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this order, and any other person served with a copy of this order, are hereby restrained and enjoined from directly or indirectly:

A.    Interfering with the Temporary Receiver's efforts to manage, or take custody, control, or possession of, the assets or Documents subject to the receivership;

B.    Transacting any of the business of the Receivership Entities;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D.      Refusing to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under any order of this court.

## XVIII. STAY OF ACTIONS

IT IS FURTHER ORDERED that, except by leave of this court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants and any Receivership Entity, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this court over the Receivership Entities, including, but not limited to:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.      Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.      Filing or enforcing any lien on any asset of the Receivership Estate, taking or attempting to take possession, custody, or control of any asset of the Receivership Estate; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership Estate, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

28

D.      Provided, however, that this order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

**XIX.    COMPENSATION OF TEMPORARY RECEIVER**

IT IS FURTHER ORDERED that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Estate. The Temporary Receiver shall file with the court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty days after the date of entry of this order. The Temporary Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the court.

**XX.    TEMPORARY RECEIVER'S BOND**

IT IS FURTHER ORDERED that the Temporary Receiver shall file with the Clerk of this court a bond in the sum of $35,000 with sureties to be approved by the court, conditioned that the Temporary Receiver will well and truly perform the duties of the office and abide by and perform all acts the court directs. 28 U.S.C. § 754.

XXI.    **TEMPORARY RECEIVER'S IMMEDIATE ACCESS TO RECEIVERSHIP ESTATE PREMISES AND RECORDS**

IT IS FURTHER ORDERED that:

A.    To ensure the preservation of assets and evidence relevant to this action and to expedite discovery, the Temporary Receiver and his representatives, agents, contractors, and assistants, shall have immediate access to the personal and business premises, records, and storage facilities, owned, controlled, or used by the Receivership Entities or the Individual Defendants; and any offsite location or commercial mailbox used by the Receivership Entities or the Individual Defendants. The Temporary Receiver may exclude Defendants, Receivership Entities, and their employees from the personal and business premises during the immediate access;

B.    The Temporary Receiver may remove all artwork and jewelry within the Receivership Estate from their current locations and move them to appropriate storage facilities, access to which is controlled by the Temporary Receiver, where they shall be held, within the Temporary Receiver's discretion, for the duration of the receivership;

C.    The Temporary Receiver, and his representatives, agents, contractors, and assistants, are authorized to remove Documents from the Receivership Entities' and the Individual Defendants' premises in order that they may be inspected, inventoried, and copied. The plaintiffs shall return any removed materials to the Temporary Receiver within five (5) days of completing inventorying and copying, or such time as is agreed upon by the plaintiffs and the Temporary Receiver;

D.    The Temporary Receiver's access to the Receivership Estate's Documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by the plaintiffs or the Temporary Receiver;

E.     The Temporary Receiver, and his representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this order;

F.     If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities and the Individual Defendants are at a location other than those listed herein, including the Primary Personal Residence of each Individual Defendant, then, immediately upon receiving notice of this order, Defendants and Receivership Entities shall produce to the Temporary Receiver all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access. In order to prevent the destruction of computer data, upon service of this order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

G.     If any communications, records, or digital assets of any Receivership Entity or Individual Defendant are stored with an Electronic Data Host, such Entity or Individual Defendant shall, immediately upon receiving notice of this order, provide the Temporary Receiver with the username, passwords, and any other login credential needed to access the communications, records, and digital assets, and shall not attempt to access, or cause a third-party to attempt to access, the communications, records or digital assets.

## XXII.  DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this order to each franchisee, affiliate, telemarketer, marketer, IBO, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of themselves, and shall, within ten days from the date of entry of this order, provide the plaintiffs and the Temporary Receiver with a sworn statement

that this provision of the order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such Person who received a copy of the order. Furthermore, Defendants shall not take any action that would encourage officers, agents, IBOs, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, franchisees, or other Persons in active concert or participation with any of them to disregard this order or believe that they are not bound by its provisions.

## XXIII. EXPEDITED DISCOVERY

IT IS FURTHER ORDERED that, notwithstanding the provisions of Federal Rule of Civil Procedure 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 33, 34, and 45,  the plaintiffs and the Temporary Receiver are granted leave, at any time after service of this order, to conduct limited expedited discovery for the purpose of discovering:  (1) the nature, location, status, and extent of Defendants' assets; (2) the nature, location, and extent of Defendants' business transactions and operations; (3) Documents reflecting Defendants' business transactions and operations; or (4) compliance with this order. The limited expedited discovery set forth in this Section shall proceed as follows:

A.    The plaintiffs and the Temporary Receiver may take the deposition of parties and non-parties. Five days' notice shall be sufficient, with no weekend or holiday depositions except to accommodate limited availability of the witness. The limitations and conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone, video conferencing platform (e.g., Zoom or Microsoft Teams), or other remote electronic means;

Case 2:25-cv-00760-CDS-NJK    Document 171    Filed 10/28/25    Page 33 of 34

B.      The plaintiffs and the Temporary Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within eight days of service;

C.      The plaintiffs and the Temporary Receiver may serve upon parties up to five Interrogatories (total) in a five-day period that require response within five days after the plaintiffs or the Receiver serve such Interrogatories;

D.      The plaintiffs and the Temporary Receiver may serve subpoenas upon non-parties that direct production or inspection within eight days of service;

E.      The plaintiffs and Temporary Receiver may use all lawful means, including posing, through its representatives as consumers or other individuals or entities, to Defendants or any entity affiliated with Defendants, without the necessity of identification or prior notice;

F.      Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery; and

G.      Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure but shall comply with the Local Rules of this court. The parties must meet and confer regarding objections to or refusals to comply with any expedited discovery request by the plaintiffs or the Temporary Receiver within three days of the request. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Federal Rules of Civil Procedure 26(d) & (f).

## XXIV.  SERVICE OF THIS ORDER

IT IS FURTHER ORDERED that copies of this order, as well as all other filings in this case (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of the plaintiffs, by any law enforcement agency, or by private process server, upon any Defendant or any Person (including any financial institution)

33

that may have possession, custody or control of any asset or Document of any Defendant, or that may be subject to any provision of this order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXV.    CORRESPONDENCE AND SERVICE ON PLAINTIFFS

IT IS FURTHER ORDERED that, for the purpose of this order, all correspondence and service of pleadings on the plaintiffs must be addressed to:

Laura C. Basford
Thomas M. Biesty
J. Ronald Brooke, Jr.
Joshua A. Doan
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
Email: lbasford@ftc.gov; tbiesty@ftc.gov; jbrooke@ftc.gov; jdoan@ftc.gov

Lucas J. Tucker
Samantha B. Feeley
State of Nevada
Office of the Attorney General
Bureau of Consumer Protection
8945 W. Russell Road, #204
Las Vegas, Nevada 89148
Email: ltucker@ag.nv.gov; sfeeley@ag.nv.gov

## XXVI.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that, until further notice or order, this court will retain jurisdiction of this matter for all purposes.

## XXVII.    DURATION OF THE ORDER

IT IS FURTHER ORDERED that this order expires on November 5, 2025, unless extended by the court.

Dated: October 27, 2025

_____
Cristina D. Silva
United States District Judge

34