UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Federal Trade Commission and State of Nevada,<br><br>Plaintiffs<br><br>v.<br><br>International Markets Live, Inc. et al.,<br><br>Defendants | Case No. 2:25-cv-00760-CDS-NJK<br><br>**Order Denying Motion for Declaratory Relief, Denying Request for an Expedited Hearing on the Declaratory Motion, and Denying Oral Motion for Counsel to Serve as Receiver**<br><br>[ECF Nos. 153, 155] |

This is an enforcement action brought by plaintiffs the Federal Trade Commission ("FTC") and the State of Nevada, against defendants International Markets Live, Inc., IM Mastery Academy Ltd., Assiduous, Inc., Global Dynasty Network, LLC., Christopher and Isis Terry ("the Terrys"), and others, to stop the operation of an alleged unlawful investment training and business scheme. *See* Compl., ECF No. 1. This order address three motions. First, a motion for declaratory relief was filed by Dana A. Dwiggins on behalf of P. Sterling Kerr, as Distribution Trustee (of the Auspicious Irrevocable Trust, Dominant Consulting Group, LLC ("Dominant")), and Terra Firma Development, LLC ("Terra Firma") and Beach Music, LLC[1] (collectively, the "Entities"). Decl. mot., ECF No. 153.[2] Therein, the Entities ask this court to—declare that the Monitor wrongfully designated the Entities as "Monitored Entities" subject to the Preliminary Injunction (PI), grant attorney's fees and payment of trustee and trustee manager fees, and seek a distribution of the Auspicious Trust funds to Christopher and Isis Terry as the beneficiaries thereof. *Id.* Having reviewed the motion, the court does not need a written opposition from the government at this time.

---

[1] The court denied a motion to intervene filed on behalf of Beach Music LLC. *See* Order, ECF No. 168. That motion sought relief from being designated as a Monitored Entity. I incorporate that order in denying that requested relief here.

[2] The relief set forth in the motion suggests this motion is one to intervene. *See* ECF No. 153 at 24 (discussing "Proposed Intervenors"). To the extent this was intended as motion to intervene, it is denied in full for failing to comply with Federal Rule of Civil Procedure 24.

Second, the Entities also filed a motion for an expedited hearing. Mot. hr'g, ECF No. 155. Although the court has not yet considered the motion, it did entertain some argument regarding the urgency of resolving the motion for declaratory relief during the October 21, 2025 hearing. Having considered the motion and relevant oral argument, the court has determined that no expedited hearing is need, so the motion is denied.

Finally, during the October 21st hearing on the FTC's motion for appointment of a receiver, counsel for the Entities orally moved to serve as the court appointed Receiver,[3] or as some sort of co-Receiver over the Entities. For the reasons set forth herein, that request is also denied.[4]

I.   Discussion

   A.   **The emergency motion for declaratory relief is denied.**

The motion, together with the oral argument during the October 21, 2025 hearing, the suggested, yet unsupported, urgency of this motion, evokes the adage: "if the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell." Filing this renewed motion as an "emergency" is akin to pounding the table. And the arguments that were raised during the hearing on October 21, 2025, felt like yelling. But neither pounding the table nor yelling entitles the movants to the relief they seek.

This motion was originally filed as an "emergency" on October 10, 2025 and October 15, 2025. *See* ECF No. 142, 147.[5] Because the motions did not comply with the local rules, and were not an emergency, the motions were denied. *See* Orders, ECF No. 144; ECF No. 151. As this court

---

[3] During the October 21, 2025 hearing, I converted the Monitor into a Temporary Receiver. A hearing on converting that Temporary Receiver into a permanent one will be held on November 5, 2025.

[4] Nonetheless, as stated on the record during the October 21, 2025 hearing, counsel for the Entities may file briefing on the limited issue of whether the Temporary Receiver should be converted to a permanent receivership.

[5] The Entities also filed an emergency motion for an expedited hearing on October 15, 2025. ECF No. 148. That motion was also denied because I deemed the motion a non-emergency and because it failed to comply with the Local Rule 7-4(c). *See* Order, ECF No. 151.

has previously held, an emergency motion is properly presented only when the movant has shown: (1) the movant will be irreparably prejudiced if the court resolves the motion under the normal briefing schedule; and (2) the movant is without fault in creating the crisis that requires emergency relief or, at the very least, that the crisis occurred because of excusable neglect. *Cardoza v. Bloomin' Brands*, 141 F. Supp. 3d 1137, 1142 (D. Nev. 2015) (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). If there is no irreparable prejudice, then no sufficient justification for bypassing the default briefing schedule exists and the motion may be properly decided on a non-expedited basis. *Id.* at 1142–43.

The motion fails to meet the high burden demonstrating emergency relief is warranted. First, while the payment of duly owed attorney's fees is important, the motion fails to cite any points and authorities showing the request is entitled to emergency relief. Candidly, the court cannot think of a single instance where payment of attorney's fees could constitute an emergency. Kerr, a lawyer who owns and operates his own firm, claims he is suffering a "financial hardship" because he has not received payment for work in a case involving LLCs that he was involved in creating or directly involved with. But this fails to demonstrate said hardship. The only "evidence" supporting the demand for attorney's fees on an emergency basis is Kerr's own self-serving declaration. *See* ECF No. 153-2. While undoubtedly an inconvenience, without more, Kerr's claim of financial hardship strains credibility.[6] Moreover, Kerr's claim of "full cooperation and transparency" is belied by the very motion through which he demands relief. One cannot be fully cooperative and transparent, while at the same claiming the Entities are *not* subject to the preliminary injunction (PI). The fact that counsel for the Entities has been helpful in disclosing documents to the Monitor is not lost on this court, but such cooperation is not only expected, it is required. However, such cooperation is not a reason for this court to find

---

[6] Exacerbating this court's concern is the admission that "Mr. Kerr caused the Trust to pay from his firm's attorney client trust account (which holds funds on behalf of the Trust) a retainer in the amount of $250,000." *See* ECF No. 153 at 9. It is unclear what or why Kerr's IOLTA account hold funds on behalf of the Trust.

that the Entities were erroneously designated as "Monitored Entities". If they were erroneously designated, counsel should provide that evidence to the Monitor to support that contention, and after doing so, if a dispute over designation continues, then the Entities can turn to the court for relief by way of a motion supported by points and authorities and importantly, evidence.

To be clear, based on the evidence before the court, each of the Entities are properly designated as Monitored Entities and are subject to the PI. The motion concedes that the Auspicious Trust is funded "**with proceeds from International Markets Live, Inc.'s ("IML") activities**" yet boldly claims it should not be designated a monitored entity because "the Trust has never engaged in the practices or activities charged in Complaint." ECF No. 153 at 3.[7] Regardless of whether the Trust has been involved in the scheme set forth in the complaint, it has received proceeds thereof. The PI defines "Monitored Entities" as follows:

> Corporate Defendants and *any other entity* that has conducted any business related to the marketing or sale of Defendants' Products, including *receipt of assets derived from any activity that is subject of the Complaint in this matter*, and that the Monitor determines is controlled or owned by any Defendant.

ECF No. 111 at 7 (emphasis added). This definition is neither unclear nor ambiguous, and mere argument that any one of the Entities is inappropriately categorized is insufficient to grant relief. Thus, because the Auspicious Trust is "any other entity" that *received* assets of the IML scheme, and based on the information before the court indicating that it is controlled by the Terrys,[8] it was properly designated as a Monitored Entity. As it relates Terra Firma Development, LLC and Beach Music, LLC, they are likewise covered by the PI. In making this finding, I incorporate the findings set forth in my order denying Beach Music's motion to intervene here. ECF No. 168.

---

[7] Regarding the Auspicious Trust, the motion also argues that "no Court in any jurisdiction has ever declared the Trust an invalid spendthrift trust created under the laws of the State of Nevada, or the creation thereof otherwise the product of fraud." ECF No. 153 at 3. However, the motion recognizes that this issue is not before the court so, it is unclear why it is included as part of the motion. Consequently, the court is left to assume it is a red herring. And because there is no specific relief tethered to this argument, the court disregards it.

[8] *See* ECF No. 158-1 at 9–10 (the Monitor identifying a $9 million cryptocurrency transfer that was dictated by Chris Terry); *id.* at 10–12 (identifying spreadsheet showing transfers from the Trust in the summer of 2025 that were for the Terrys and directed by the Terrys).

Last, it is unclear how Dominant Consulting fits into the web of LLCs associated with the Terrys and the Corporate Entities. However, the motion makes representations that Dominant Consulting is associated with real estate, and the monitor's limited information suggests that one of Chris Terry's interest is real estate. *See* Ex. 10, ECF No. 163-12 at 7–8 (messages from Chris Terry discussing how he understands real estate); Ex. A, ECF No. 163-1 at 11–12 (summarizing purchase of real estate for Chris Terry's girlfriend); *id.* at 14 (2023 texts messages from Chris Terry discussing plans to purchase real estate); Ex.8, ECF No. 163-10 at 4–6 (messages from July about real estate in Henderson). When weighing this evidence—suggesting assets or proceeds from the business scheme set forth in the complaint was moved through Dominant Consulting, against the motion that provides no more than an assertion that Dominant Consulting should not be designated as a Monitored Entity[9]—the court declines the request to declare it was improperly designated as a Monitored Entity.

Finally, the motion also includes a request to release funds from the Trust to the Terrys, purportedly for living expenses. This request is denied. First, the motion is improperly raised in this motion as counsel does not represent the Terrys. Further, during the October 21st hearing, the court ordered the Monitor to respond to the same request though the Terrys' counsel of record.

### B. Counsel for the Entities' oral request to serve as the Receiver or co-Receiver is denied.

During the October 21, 2025 hearing on the FTC's motion for appointment of a receiver, counsel for the Entities orally moved to serve as the receiver,[10] or as some sort of co-Receiver over the Entities. Mins., ECF No. 167. The court sees no reason to grant this request. Mr.

---

[9] Specifically, the motion argues the Entities, including Dominant, are not "controlled" by any Corporate Defendant, nor do they contain any assets for the benefit for any Corporate Defendant. The motion lacks evidence to support this argument.

[10] During the October 21, 2025 hearing, I converted the Monitor into a Temporary Receiver. A hearing on whether the court will convert the Temporary Receiver into a permanent one will be held on November 5, 2025.

McNamara, who has already been appointed to serve on behalf of the court, is qualified to serve as the Temporary Receiver. Appointing another person to do the same job is a waste of court resources. Moreover, permitting counsel to serve as a Receiver or co-Receiver is not only a conflict of interest, because she was hired to protect the interests of *the Entities*, but also directly contradicts the very purpose of a Receivership. "A court-appointed receiver is an officer of the court, appointed on behalf and for the benefit of all the parties having an interest in the property, not for the plaintiff or defendant alone." *N. Am. Broad., LLC v. United States*, 306 F. App'x 371, 373 (9th Cir. 2008). Accordingly, counsel's oral request is denied.

### IV. Conclusion

IT IS HEREBY ORDERED that the Entities' motion for declaratory relief **[ECF No. 153]** and motion for an expedited hearing **[ECF No. 155] are DENIED.**

IT IS FURTHER ORDERED that the Entities' counsel's oral motion to serve as the Receiver or co-Receiver in this action is DENIED.

Dated: October 29, 2025

_____
Cristina D. Silva
United States District Judge