Thomas M. Biesty
NY Bar No. 4172896; (202) 326-3043; tbiesty@ftc.gov
Laura C. Basford
DC Bar No. 993645; (202) 326-2343; lbasford@ftc.gov
J. Ronald Brooke, Jr.
MD Bar No. 0202280002; (202) 326-3484; jbrooke@ftc.gov
Joshua A. Doan
DC Bar No. 490879; (202) 326-3187; jdoan@ftc.gov
600 Pennsylvania Ave., NW, CC-6316
Washington, DC 20580
Attorneys for Plaintiff Federal Trade Commission

Aaron D. Ford, Attorney General
Ernest D. Figueroa, Consumer Advocate
Lucas J. Tucker
NV Bar No. 10252; (702) 486-3256; ltucker@ag.nv.gov
Samantha B. Feeley
NV Bar No. 14034; (702) 486-3789; sfeeley@ag.nv.gov
State of Nevada, Office of the Attorney General
Bureau of Consumer Protection
8945 W. Russell Road, #204
Las Vegas, NV 89148
Attorneys for Plaintiff State of Nevada

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION** and **STATE OF NEVADA**, <br><br> Plaintiffs, <br><br> v. <br><br> **INTERNATIONAL MARKETS LIVE, INC.**, et al., <br><br> Defendants. | Case No. 2:25-cv-00760-CDS-DJA <br><br> **PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH THIS COURT'S PRELIMINARY INJUNCTION ORDERS (ECF Nos. 111, 171, 188)** |

1

Defendants Christopher and Isis Terry, International Markets Live, Inc., Assiduous, Inc., and IM Mastery Academy, Ltd. (collectively "Defendants") have violated this Court's preliminary injunction orders by failing to provide completed financial disclosure statements and a sworn accounting of their foreign assets to Plaintiffs, the Federal Trade Commission ("FTC") and the State of Nevada, and the Court-appointed Receiver, Thomas W. McNamara. Complete disclosures were originally due August 26, 2025. To date, however, Defendants have produced materially incomplete disclosures, and the substantial deficiencies have been hindering the Receiver's Court-mandated efforts to marshal Defendants' assets. For example, Defendants have failed to identify any recipients of millions of dollars in cryptocurrency transfers and have failed to disclose expensive jewelry and watches that the Receiver has located evidence of during his inspection of Defendants' numerous luxury homes.

Before bringing this Motion, Plaintiffs engaged extensively with Defendants regarding their inadequate financial disclosures, including multiple meet-and-confers—both in-person and via teleconference—and numerous emails over the past four months. Ex. 1 at 2-23 (Fifth Brooke Decl., ¶¶2-13, Atts. A-F). Nevertheless, Defendants continue to refuse to provide complete financial disclosures and, recently, Defendants' counsel has stopped communicating with Plaintiffs on this issue. *Id*. at 4 (Fifth Brooke Decl., ¶13). Under these circumstances, Plaintiffs are compelled to file this Motion. Plaintiffs therefore respectfully request that this Court issue an order to show cause why Defendants should not be held in contempt for failing to comply with the preliminary injunction issued in this matter. Plaintiffs provide the below Memorandum of Points and Authorities in support of their Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Procedural and Factual History

Plaintiffs filed this action on May 1, 2025, alleging that International Markets Live, Inc. ("IML"), its principals the Terrys, and seven other defendants defrauded consumers out of nearly $1.3 billion through a multi-level marketing scheme that deceptively marketed financial training services, in violation of the FTC Act, the Restore Online Shoppers' Confidence Act, the Telemarketing Sales Rule, and Nevada consumer protection laws. ECF No. 1. Less than three weeks after Plaintiffs filed their Complaint, the IML scheme suspended its operations. ECF No. 42 at 9, n.1; ECF Nos. 42-32, 42-48, PX25, 2724, 6917 (Second Tyndall Decl., ¶36, Att. AA). Shortly thereafter, Plaintiffs sought injunctive relief.

### A.  This Court's Preliminary Injunctions and Defendants' Noncompliance

Plaintiffs filed a motion for a preliminary injunction ("PI") on May 30, 2025, seeking the appointment of a monitor, an asset freeze over the Corporate Defendants, an asset preservation order over the Terrys, and a requirement that the Defendants provide financial and foreign asset disclosure statements to Plaintiffs and the Monitor. ECF No. 42. Attached to Plaintiffs' Motion for a PI, and served on Defendants on May 30, were the financial disclosure forms which Plaintiffs requested the Court order Defendants to complete. ECF No. 42-3, 42-4. The Court granted Plaintiffs' motion for a PI on August 7. ECF No. 99. On August 11, the Court issued a written PI order requiring, in Section VIII, that:

> Each Defendant, within five (5) days of service of this order upon them, shall prepare and deliver to Plaintiffs' counsel and the Monitor:
>
> A. Completed financial statements on the forms attached to this order as **Attachment B** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment C** (Financial Statement of Corporate Defendant) for each Corporate Defendant...[1]

---

[1] ECF No. 104 at 15. The original PI required completed Financial Disclosures be produced

3

The order further required, in Section IX, that:

> within five days following the service of this order, each Defendant shall:
>
> A. Provide Plaintiffs' counsel and the Monitor with a full accounting, verified under oath and accurate as of the date of this, of all assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant…[2]

Despite this explicit and unambiguous mandate, Defendants did not provide completed financial disclosure statements or any sworn accounting of their foreign assets to Plaintiffs and the Monitor. Instead, the Terrys provided partial financial disclosure statements that failed to disclose significant assets.[3] The Monitor's Preliminary Report, filed October 6, 2025, described the tortuous process whereby the Terrys slowly provided inadequate financial disclosure statements. ECF No. 140-1 at 8-10. The Preliminary Report also detailed how the Defendants had created a maze of entities and extensive cryptocurrency transfers to hide their ill-gotten assets from potential law enforcement action. *Id.* at 12-17.

On October 16, Plaintiffs moved on an emergency basis to modify the PI and convert the Monitor into a receiver, with authority over the Corporate Defendants and the Terrys' assets. ECF No. 150. The Court granted Plaintiffs' motion; first, by appointing Thomas McNamara as a Temporary Receiver (ECF Nos. 167, 171), and then by appointing him Permanent Receiver.

---

within five days, or August 16, 2025. However, at Defendants' request, the parties agreed to extend the period to eight days in the first modified PI, ECF No. 111, which extended the disclosure date to August 26, 2025, eight days after the first modified PI was entered. ECF No. 111 at 15.

[2] *Id.* at 15-16.

[3] On August 29, Plaintiffs moved for an order to show cause why Defendants should not be held in contempt for their failure to provide financial disclosure statements. ECF No. 115. On September 3, the Court denied that motion but cautioned Defendants that partial compliance was not acceptable.

4

ECF No. 188 ("Modified PI"). In granting Plaintiffs' motion, the Court found that: "Defendants' actions following the PI establish that they will likely continue to hide and dissipate assets if not relieved of control of those assets." ECF No. 188 at 3. Citing to the Monitor's Preliminary Report, the Court also found that Defendants:

> failed to produce the majority of the business records required by the PI…Failed to provide complete Financial Disclosures required by the PI…Misrepresented their assets in their Financial Disclosure forms, including by claiming that Defendant Isis Terry's engagement ring was worth $10,000 when it had been valued at $2,874,482…Failed to provide the Foreign Asset Disclosures required by the PI… [and] [p]rovided deposition testimony that demonstrates a disrespect for this court's orders. *Id*.

At the November 5, 2025 hearing, this Court found that a receiver was necessary, in part, because of "the lack of complete and fulsome disclosure by the Terrys and the entities…There have been failures to provide financial disclosures that were required and were required by this Court back in August." Nov. 5, 2025 PI Hr'g Tr. at 42-43. The Court also noted: "I am concerned by the very argument [Defendants make] that the FTC hasn't identified assets that have been dissipated while at the same time the information necessary to make identifications regarding finances haven't been disclosed. That, itself, is suspicious, to say the least." *Id*. at 43.

The currently-operative Modified PI required Defendants to provide completed financial statements by November 7, 2025. ECF No. 188 at 16. Despite repeated meet and confers, including an in-person meeting on September 15, 2025, in Las Vegas, and multiple email communications, Defendants still have not provided complete financial disclosure statements or any accounting of their foreign assets. Ex. 1 at 2-23 (Fifth Brooke Decl., ¶¶2-13, Atts. A-F). Indeed, Chris and Isis Terry have not even attempted to remedy the incomplete and inaccurate individual financial disclosures they provided prior to the November 5 hearing. *Id*. at 2 (Fifth Brooke Decl., ¶4). The Corporate Defendants' financial disclosures are also incomplete. International Markets Live, Inc. provided an unsigned financial disclosure statement that does

5

not disclose any of its cryptocurrency transfers, and Assiduous and International Market Live, Ltd.'s statements similarly disclose none of their cryptocurrency transfers.[4]

### B. New Evidence of Defendants' Violations of the Preliminary Injunctions

The Receiver's December 9, 2025 Interim Status Report (ECF No. 212) offers further revelations of the Terrys' continued efforts to circumvent this Court's orders and hide away their assets, rather than reporting them as required. The Interim Status Report details the Receiver's findings upon conducting in-person inspections of six of the Terrys' luxury homes pursuant to the Modified PI. The Receiver reports that, in conducting his inspection of Isis Terry's 12,000 square foot Westchester, New York mansion, he "found substantial handwritten notes by Ms. Terry confirming that there are several items of personal property, including jewelry, that Ms. Terry has not disclosed on the personal financial disclosures that she has submitted to us and the Plaintiffs under oath." ECF No. 212 at 4. He also notes that "documentary evidence suggests there are many luxury watches and jewelry that are located somewhere else and have never been disclosed." *Id*. Finally, he concludes that: "we are confident that the defendants have not

---

[4] Ex. 2 at 3, 13-59 (Tenth Tyndall Decl., ¶¶4-6, Atts. C-E). On or about November 16, 2025, Defendants provided two logs of cryptocurrency transfers, which, according to their counsel George Kelesis, reflect transfers to and from the two "cold wallets," which were used by Chris Terry and are now in the possession of the Receiver. *Id*. at 3 (Tenth Tyndall Decl., ¶7); ECF No. 140-1 at 19, n.16. The logs do not identify the recipients of the cryptocurrency transfers, and they do not identify the source of the cryptocurrency Chris Terry received, except by anonymous account numbers. The financial disclosure form requires the Terrys to disclose "each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties)." The form also requires that, for each such person or entity listed, the Terrys "state the total amount transferred during that period." *Id*. ("Item 23. Transfers of Assets"). Thus, the logs do not provide the information sought by the financial disclosure forms.

identified and we have not located or taken possession of the majority of the Terrys' jewelry, which we believe they spent millions on."[5]

In addition to hiding their jewelry, the Receiver reports that Chris Terry transferred millions of dollars, via gifts of "luxury automobiles, jewelry…clothing, and…housing" to "a multitude of third parties, including family and friends…his live-in girlfriend…[and] to other women," but that the Terrys have not provided the required sworn financial disclosures identifying these transfers. ECF No. 212 at 22. This has made it "challenging" for the Receiver to value and preserve the receivership estate. *Id*. at 22-23. The Receiver also reports that the Terrys sought to evade this Court's asset preservation order by instructing their Dubai house manager to return luxury clothing the Terrys had previously purchased from Versace, and to keep the proceeds, in lieu of his regular salary. ECF No. 212 at 12.

## II.    Legal Standard

"There can be no question that" the Court has the "inherent power to enforce compliance with" its orders "through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "Civil contempt 'consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *SEC v. Beasley,* No. 2:22-CV-00612-CDS-EJY, 2023 WL 9036917, at *11 (D. Nev. Dec. 28, 2023) (Silva, J.), (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)), *aff'd sub nom. SEC v. Grigsby*, No. 24-628, 2025 WL 817421 (9th Cir. Mar. 14, 2025).

The standard for finding civil contempt is black-letter law. The moving party must "show[] by clear and convincing evidence that the contemnors violated a specific and definite

---

[5] ECF No. 212 at 25. The Receiver is now in possession of Isis Terry's diamond engagement ring, which has been appraised for insurance purposes at nearly $3 million, and which she had omitted from her financial disclosure statements until the Receiver questioned her about the ring at her deposition. ECF No. 140-1 at 23. However, the Receiver's December 9 report indicates that additional jewelry owned by the Terrys has not been identified by Defendants.

order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir.1992)). Once Plaintiffs have met this burden, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id*.

"A sanction for civil contempt is intended to coerce the contemnor to comply with the court's order in the future." *Beasley,* 2023 WL 9036917, at *11 (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992)). The district court has discretion regarding what specific sanctions to apply but "should apply the least coercive sanction ... reasonably calculated to win compliance with its orders." *Id*. (quoting *United States v. Alfredoflores*, 628 F.2d 521, 527 (9th Cir. 1980).

## ARGUMENT

**III.     Defendants Violated a Specific and Definite Court Order**

There can be no dispute that Defendants have violated a specific and definite court order. This Court has repeatedly ordered Defendants to provide sworn financial disclosure statements and accountings of foreign assets. *See* ECF No. 104 at 15-16 (Section VIII. Financial Disclosures, IX. Foreign Asset Disclosures); ECF No. 111 at 15-16 (Section VIII. Financial Disclosures, IX. Foreign Asset Disclosures); ECF No. 171 at 17-18 (Section VI. Financial Disclosures, VII. Foreign Asset Repatriation); ECF No. 188 at 16-17 (Section VI. Financial Disclosures, VII. Foreign Asset Repatriation). The terms of the orders are clear and specific, and the financial disclosure forms Defendants have been required to complete are attached to each of the orders. Despite these clear orders, and despite repeated requests, calls, meetings and emails from Plaintiffs seeking sworn financial disclosure statements and accountings of foreign assets, Defendants have failed to provide truthful and complete financial disclosures.

Most recently, the Court ordered Defendants to provide complete financial disclosure statements by November 7, 2025. ECF No. 188 at 16. At the November 5, 2025 hearing at which

the Court mandated that deadline, the Court noted that the financial disclosures "are extremely untimely" and that Defendants' delay was "wholly unacceptable." Nov. 5, 2025 PI Hr'g Tr. at 45-46. The Court further noted that there would "be no extensions of [the November 7th] deadline." *Id*. at 46.

Despite the Court's clear directive from the bench to Defendants' counsel, Defendants have not complied. As the Receiver describes in his December 9 Interim Status Report, Defendants have failed to provide completed disclosures, and their omissions are material.[6] In particular, he concludes that the Terrys have not disclosed all their jewelry, and he notes that Chris Terry made numerous high-value transfers to a vast array of third parties, which he has not reported on his financial disclosure forms. Similarly, the Corporate Defendants have failed to disclose any asset transfers, even though the Receiver has previously found that they made massive transfers of cryptocurrency assets to Christopher Terry. ECF No. 140-1 at 12. Despite these findings, which are available to Defendants in the public court docket, Defendants have not listed these transfers in the Corporate Defendants' financial disclosure statements.

Plaintiffs have also recently uncovered evidence that, in July 2025, Chris Terry purchased a $150,000 Range Rover and then transferred the vehicle to his attorney, George Kelesis. Ex. 2 at 2-3, 6-11 (Tenth Tyndall Decl., ¶¶4-6, Atts. A, B). While the financial disclosure statement does not require the disclosure of transfers for "ordinary and necessary living and business expenses paid to unrelated third parties," purchasing a luxury vehicle for a defense attorney while there is a pending motion filed against you seeking an asset freeze and asset preservation is not an "ordinary and necessary" expense. ECF No. 188 at 64 ("Item 23: Transfers of Assets"). Like so

---

[6] *See supra*, 6-7. In this case the failure to provide sworn financial disclosure statements and accountings of foreign assets is unquestionably material to the Court's ability to maximize potential redress for Defendants' numerous victims. It has a material effect on the size of the receivership and the cost of identifying and marshaling receivership assets.

many others, this apparent transfer has not been identified by Defendants.

Plaintiffs and the Receiver have also uncovered considerable evidence that Defendants engaged in a massive, yearslong effort to transfer ill-gotten gains from the IML scheme into offshore accounts, cryptocurrency, Dubai real estate, an irrevocable trust, and into the hands of third parties, like Chris Terry's live-in girlfriend Keishia McLeod. ECF Nos. 140-1 at 12-17, 150 at 5-10, 163-1 at 5-15. These complex transfers were aimed at foiling the consequences of any legal action taken against Defendants, and to allow the Defendants to avoid their tax liabilities.[7] Defendants' refusal to disclose their transfers of assets—including the recent transfer of a luxury vehicle to the Terrys' attorney—is consistent with their continuing efforts to shield assets from law enforcement. Given Defendants' well-documented and longstanding disdain for the law and their continuing efforts to evade this Court's orders, an order to show cause is necessary.

### IV.     Defendants Have Failed to Take All Reasonable Steps to Comply with the PI

Defendants have not taken all reasonable steps to comply with the Court's order to provide complete financial disclosures and accountings of foreign assets. To take one example, Plaintiffs and the Receiver have been able to piece together evidence of considerable transfers made by the Defendants that were not reported on their financial disclosures. Even before the first PI was entered months ago, Plaintiffs identified significant transfers of assets made by IML, including thousands of dollars spent on homeowners' association fees and luxury apparel. ECF No. 95-2 at 5 (Second Decl. of Roshni Agarwal, FTC Forensic Accountant). Although these transfers had been identified by Plaintiffs in public docket filings in this case, Defendants have

---

[7] To take just one example, the Receiver has uncovered communications in which Chris and Isis Terry discuss the use of cryptocurrency "cold wallets" or "ledgers" to evade their tax liabilities. ECF No. 163-1 at 5. After Chris assured Isis that their cryptocurrency assets were "off record" and "off grid," and the IRS had no knowledge of them; Isis responded enthusiastically: "Yes, fuck the IRS !!!" ECF No. 163-3 at 6. The Receiver later informed Defendants that their "Auspicious Trust" "was apparently created to further a scheme of tax fraud against the United States." ECF No. 199-1 at 6, n.2.

not included information about these transfers in their financial disclosure statements.

After the Court issued its first PI, the Receiver (then acting as Monitor) found that the Terrys financed their extravagant lifestyles by taking tens of millions of dollars of cryptocurrency from the IML scheme to buy real estate, cars, and various other accoutrements of wealth. ECF No. 140-1 at 12-15. And counsel for Keishia McLeod has stated to the Receiver that Chris Terry made the following "gift" transfers to her: (1) a classic 1963 Impala; (2) a Lamborghini Huracan; (3) a black Porsche convertible; and (4) an expensive tiara.[8] Chris Terry's financial disclosures, however, make no mention of these transfers.[9]

Even when faced with this information, in public docket filings in this case, Defendants obstinately refuse to update their financial disclosures to address these obvious and undisputed deficiencies. While Plaintiffs and the Receiver have been able to uncover evidence of some transfers and other assets through alternative means, the deficient financial disclosures Defendants have provided to date suggest strongly that Defendants have significant other assets, of which Plaintiffs and the Receiver are still unaware.

Another example of Defendants' failure to take reasonable steps to comply with this Court's orders is the Terrys' failure to disclose in their financial disclosure statements the Auspicious Trust, which indisputably holds assets worth many millions of dollars for the benefit of the Terrys. Despite the Trust filing motions repeatedly in this action on behalf of the Terrys (*see*, *e.g.*, Auspicious Trust's Motion seeking to pay for the Terrys' personal expenses, ECF No. 153) and the Terrys' filing multiple briefs in this action seeking to protect the interests of the Trust (*see*, *e.g.*, ECF No. 157, in which Defendants' counsel argues that the Trust, as a Receivership Entity, must be given a hearing before a receivership may be imposed), the Terrys

---

[8] ECF No. 212 at 21, 212-7 at 2-4.
[9] ECF No. 140-2 at 108.

refuse to report the Auspicious Trust and its holdings in their financial disclosure statements. The only reasonable conclusion at this point is that Defendants do not wish to provide "complete and fulsome" financial disclosures, not that they cannot do so. Nov. 5, 2025 PI Hr'g Tr. at 42.

Defendants previously indicated to Plaintiffs that they were purportedly unable to provide complete financial disclosures because an "expert" was necessary for them to disclose their extensive cryptocurrency transfers. This argument fails for multiple reasons. Most importantly, Defendants have provided no explanation as to why an expert is needed for Defendants to disclose *to whom* they transferred cryptocurrency. Ex. 1 at 4, 23 (Fifth Brooke Decl., ¶¶12-13, Att. F). Especially given the anonymity of cryptocurrency transactions, the parties most likely to know the identities of their cryptocurrency transfer recipients are the Terrys themselves. And if assistance is needed in valuing the cryptocurrency transfers in U.S. dollars, there are free online tools that would allow Defendants to determine the value of a cryptocurrency transfer at the time the transfer was made.[10] Furthermore, the Terrys have provided no reason as to why they are unable to disclose their jewelry or their transfers of non-cryptocurrency assets (like the automobiles and jewelry given to Ms. McLeod) in their financial disclosure statements. Nor have the Terrys provided any explanation as to why they are unable to disclose the Auspicious Trust and the assets it includes, or provided a sworn accounting of their foreign assets.

## V.   Conclusion

For the reasons set forth above, Plaintiffs respectfully request that this Court enter an order to show cause why the Defendants should not be held in contempt for their violations of this Court's preliminary injunction orders.

---

[10] *See, e.g.*, https://coinmarketcap.com/currencies/bitcoin/historical-data/ (showing the value of Bitcoin each day dating back to at least 2020).

Respectfully submitted,

Dated: December 22, 2025                    /s/ Laura C. Basford

| | |
|---|---|
| AARON D. FORD | THOMAS M. BIESTY |
| Attorney General | LAURA C. BASFORD |
| ERNEST D. FIGUEROA | J. RONALD BROOKE, JR. |
| Consumer Advocate | JOSHUA A. DOAN |
| LUCAS J. TUCKER | Federal Trade Commission |
| SAMANTHA B. FEELEY | 600 Pennsylvania Ave., NW, CC-6316 |
| Office of the Nevada Attorney General | Washington, DC 20580 |
| 8945 West Russell Road, Suite #204 | (202) 326-3043 (Biesty) |
| Las Vegas, NV 89148 | (202) 326-2343 (Basford) |
| (702) 486-3256 (Tucker) | (202) 326-3484 (Brooke) |
| (702) 486-3789 (Feeley) | (202) 326-3187 (Doan) |
| Email: ltucker@ag.nv.gov; | Email: tbiesty@ftc.gov; lbasford@ftc.gov; |
| sfeeley@ag.nv.gov | jbrooke@ftc.gov; jdoan@ftc.gov |
| | |
| Attorneys for Plaintiff | Attorneys for Plaintiff |
| STATE OF NEVADA | FEDERAL TRADE COMMISSION |

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Fifth Declaration of J. Ronald Brooke, Jr., Attorney for Plaintiff Federal Trade Commission |
| 2 | Tenth Declaration of Reeve Tyndall, Senior Investigator for Plaintiff Federal Trade Commission |