Thomas M. Biesty
NY Bar No. 4172896; (202) 326-3043; tbiesty@ftc.gov
Laura C. Basford
DC Bar No. 993645; (202) 326-2343; lbasford@ftc.gov
J. Ronald Brooke, Jr.
MD Bar No. 0202280002; (202) 326-3484; jbrooke@ftc.gov
Joshua A. Doan
DC Bar No. 490879; (202) 326-3187; jdoan@ftc.gov
600 Pennsylvania Ave., NW, CC-6316
Washington, DC 20580
Attorneys for Plaintiff Federal Trade Commission

Aaron D. Ford, Attorney General
Ernest D. Figueroa, Consumer Advocate
Lucas J. Tucker
NV Bar No. 10252; (702) 486-3256; ltucker@ag.nv.gov
Samantha B. Feeley
NV Bar No. 14034; (702) 486-3789; sfeeley@ag.nv.gov
State of Nevada, Office of the Attorney General
Bureau of Consumer Protection
8945 W. Russell Road, #204
Las Vegas, NV 89148
Attorneys for Plaintiff State of Nevada

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION** and **STATE OF NEVADA**, <br><br> Plaintiffs, <br><br> v. <br><br> **INTERNATIONAL MARKETS LIVE, INC.**, et al., <br><br> Defendants. | Case No. 2:25-cv-00760-CDS-DJA <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR CONTEMPT OF COURT AGAINST DEFENDANTS (ECF No. 215)** |

1

Individual Defendants Christopher and Isis Terry ("the Terrys") and Corporate Defendants International Markets Live, Inc., Assiduous, Inc., and IM Mastery Academy, Ltd. (collectively "Defendants") continue to violate this Court's Preliminary Injunction (ECF No. 188) by failing to provide complete and accurate financial disclosure statements and a sworn accounting of their foreign assets to Plaintiffs, the Federal Trade Commission ("FTC") and the State of Nevada, and the Court-appointed Receiver, Thomas W. McNamara. Complete disclosures and sworn accountings of foreign assets were originally due August 26, 2025. ECF No. 111 at 15-16. To date, however, Defendants have produced materially incomplete disclosures, including by failing to identify any recipients of tens of millions of dollars in cryptocurrency transfers and by failing to disclose expensive jewelry and watches that the Receiver has located evidence of during his inspection of Defendants' numerous luxury homes.

Defendants' long-standing refusal to comply with this Court's orders requiring them to provide complete and accurate financial disclosures and sworn accountings of their foreign assets frustrates Plaintiffs' and the Receiver's efforts to identify and marshal Defendants' assets to ensure that those assets are preserved for potential consumer redress, should Plaintiffs prevail in this litigation. Due to Defendants' failures to provide complete and accurate financial disclosures and a sworn accounting of their foreign assets, Plaintiffs filed a Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failure to Comply with This Court's Preliminary Injunction ("PI") Orders (ECF No. 215; "Contempt Motion") on December 22, 2025. At the January 23, 2026 hearing on the Contempt Motion, this Court granted Plaintiffs' request. ECF No. 227. Defendant Isis Terry refused to attend that hearing, despite being repeatedly ordered to do so by this Court. *Id*.; ECF Nos. 218, 225.

Plaintiffs file this brief in further support of the Contempt Motion and respectfully request that this Court direct the Clerk to enter a default as to all Defendants, unless they remedy

their contempt within three days. In the alternative, Plaintiffs respectfully request that the Court: (1) order coercive incarceration of the Terrys until they fully comply with the Modified PI; and (2) direct the Clerk to enter a default as to the Corporate Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     Procedural and Factual History

#### A.     This Court's Preliminary Injunctions and Defendants' Noncompliance

Plaintiffs filed this action on May 1, 2025. ECF No. 1. The Court granted Plaintiffs' motion for a PI on August 7. ECF No. 99. On August 11, the Court issued a written PI order requiring, in Section VIII, that:

> Each Defendant, within five (5) days of service of this order upon them, shall prepare and deliver to Plaintiffs' counsel and the Monitor:
>
> A. Completed financial statements on the forms attached to this order as **Attachment B** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment C** (Financial Statement of Corporate Defendant) for each Corporate Defendant...[1]

The order further required, in Section IX, that:

> within five days following the service of this order, each Defendant shall:
>
> A. Provide Plaintiffs' counsel and the Monitor with a full accounting, verified under oath and accurate as of the date of this, of all assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant….[2]

---

[1] ECF No. 104 at 15. The original PI required completed financial disclosures be produced within five days, or by August 16, 2025. At Defendants' request, the parties agreed to extend the period to eight days in the first modified PI, ECF No. 111, which extended the disclosure date to August 26, 2025, eight days after the first modified PI was entered. ECF No. 111 at 15.

[2] *Id*. at 15-16.

Despite this explicit and unambiguous mandate, Defendants did not provide completed financial disclosure statements or any sworn accounting of their foreign assets to Plaintiffs and the Monitor. Instead, the Terrys provided partial financial disclosure statements that failed to disclose significant assets, income, and transfers. The Corporate Defendants did not provide any financial disclosure statements until late November 2025; those statements were incomplete, as discussed below.[3] The Monitor's Preliminary Report, filed October 6, 2025, described the tortuous process whereby the Terrys slowly provided inadequate financial disclosure statements. ECF No. 140-1 at 8-10. It also detailed how Defendants had created a maze of entities and extensive cryptocurrency transfers to hide ill-gotten assets from potential creditors and law enforcement actions. *Id*. at 12-17.

On October 16, Plaintiffs moved on an emergency basis to modify the PI and convert the Monitor into a receiver, with authority over the Corporate Defendants and the Terrys' assets. ECF No. 150. The Court granted Plaintiffs' motion; first, by appointing the Monitor as a Temporary Receiver (ECF Nos. 167, 171), and then by appointing him Permanent Receiver. ECF No. 188 ("Modified PI"). In granting Plaintiffs' motion, the Court found that: "Defendants' actions following the PI establish that they will likely continue to hide and dissipate assets if not relieved of control of those assets." ECF No. 188 at 3. Citing to the Monitor's Preliminary Report, the Court also found that Defendants:

> failed to produce the majority of the business records required by the PI…Failed to provide complete Financial Disclosures required by the PI…Misrepresented their assets in their Financial Disclosure forms, including by claiming that Defendant Isis Terry's engagement ring was worth $10,000 when it had been valued at $2,874,482…Failed to provide the Foreign Asset Disclosures required by the PI… [and] [p]rovided deposition testimony that demonstrates a disrespect for this court's orders. *Id*.

---

[3] ECF No. 215-2 at 3 (Tenth Tyndall Decl., ¶8). On August 29, Plaintiffs moved for an order to show cause why Defendants should not be held in contempt for failure to provide financial disclosure statements. ECF No. 115. On September 3, the Court denied that motion (ECF No. 122) but cautioned Defendants that partial compliance was unacceptable.

At the November 5, 2025 hearing, this Court found that a receiver was necessary, in part, because of "the lack of complete and fulsome disclosure by the Terrys and the entities…There have been failures to provide financial disclosures that were required and were required by this Court back in August." Nov. 5, 2025 PI Hr'g Tr. at 42-43. The Court also noted: "I am concerned by the very argument [Defendants make] that the FTC hasn't identified assets that have been dissipated while at the same time the information necessary to make identifications regarding finances haven't been disclosed. That, itself, is suspicious, to say the least." *Id*. at 43.

The operative Modified PI expressly required Defendants to provide completed financial disclosure statements by November 7, 2025. ECF No. 188 at 16. Despite repeated meet and confers, including an in-person meeting on September 15, 2025, in Las Vegas, and multiple email communications, Defendants refused to provide complete financial disclosure statements or any accounting of their foreign assets. ECF No. 215-1 at 2-23 (Fifth Brooke Decl., ¶¶2-13, Atts. A-F). Indeed, Chris and Isis Terry did not even attempt to remedy the incomplete and inaccurate individual financial disclosures they provided prior to the November 5 hearing. *Id*. at 2 (Fifth Brooke Decl., ¶4). The Corporate Defendants' financial disclosures also remain incomplete, and they have failed to provide a sworn accounting of their foreign assets. International Markets Live, Inc. provided only an unsigned financial disclosure statement that does not disclose any of its cryptocurrency transfers, even though the Receiver has found evidence that the company transferred over $80 million to Chris Terry. ECF No. 140-1 at 12. Corporate Defendants Assiduous, Inc. and IM Mastery Academy, Ltd. similarly disclose none of their cryptocurrency transfers in their financial disclosure statements.[4]

---

[4] ECF No. 215-2 at 3, 12-59 (Tenth Tyndall Decl., ¶8, Atts. C-E). On or about November 16, 2025, Defendants provided two logs of cryptocurrency transfers, which, according to their counsel George Kelesis, reflect transfers to and from two "cold wallets," which were used by Chris Terry and are now in the possession of the Receiver. *Id*. at 3 (Tenth Tyndall Decl., ¶7);

5

**B.    The Receiver Confirms Ongoing Violations of the Preliminary Injunctions**

The Receiver's December 9, 2025 Interim Status Report (ECF No. 212) found further evidence of the Terrys' efforts to hide assets from the Receiver and Plaintiffs. He reported that, at Mrs. Terry's Mt. Kisco, New York mansion, he "found substantial handwritten notes by Ms. Terry confirming that there are several items of personal property, including jewelry, that Ms. Terry has not disclosed on the personal financial disclosures that she has submitted to us and the Plaintiffs under oath." *Id.* at 4. He also noted that "documentary evidence suggests there are many luxury watches and jewelry that are located somewhere else and have never been disclosed." *Id*. Finally, he concluded that: "we are confident that the defendants have not identified and we have not located or taken possession of the majority of the Terrys' jewelry, which we believe they spent millions on."[5]

In addition to hiding their jewelry, the Receiver reported that Chris Terry transferred millions of dollars, via gifts of "luxury automobiles, jewelry…clothing, and…housing" to "a multitude of third parties, including family and friends…his live-in girlfriend…[and] to other women," but that the Terrys have not provided the required sworn financial disclosures identifying these transfers. ECF No. 212 at 22. This has made it "challenging" for the Receiver to value and preserve the receivership estate. *Id*. at 22-23. The Receiver also reported that the

---

ECF No. 140-1 at 19-20, n.16. The logs do not identify the recipients of the cryptocurrency transfers, and they do not identify the source of the cryptocurrency Chris Terry received, except by anonymous account numbers. The financial disclosure form requires the Terrys to disclose "each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties)." *See* ECF No. 188 at 64 ("Item 23. Transfers of Assets). The form also requires that, for each such person or entity listed, the Terrys "state the total amount transferred during that period." *Id*. The Terrys have failed to comply with these requirements.

[5] ECF No. 212 at 25. The Receiver is now in possession of Isis Terry's diamond engagement ring, which has been appraised for insurance purposes at nearly $3 million, and which she had omitted from her financial disclosure statements until the Receiver questioned her about the ring at her deposition. ECF No. 140-1 at 23.

Terrys sought to evade this Court's asset preservation order by instructing their Dubai house manager to return luxury clothing the Terrys had previously purchased from Versace, and to keep the proceeds, in lieu of his regular salary. *Id.* at 12.

### C. Contempt Motion and Defendants' Improper Invocation of the Fifth Amendment

For months after the Court issued the first PI, Plaintiffs sought complete financial disclosures and a sworn accounting of foreign assets from Defendants. *See, generally*, ECF No. 215-1 (Fifth Brooke Decl.). Rather than coming into compliance, Defendants' counsel simply stopped communicating with Plaintiffs on this issue in mid-November 2025. *Id*. at 4 (Fifth Brooke Decl., ¶13). Thus, Plaintiffs were forced to file a second contempt motion on December 22, 2025. ECF No. 215. Defendants then sought a week extension to respond to the Contempt Motion. On January 12, 2026, they filed a single-page "Notice of Opposition" devoid of any factual or legal argument. ECF No. 219. In it, the Terrys (but not the Corporate Defendants), for the first time, invoked their "Fifth Amendment Constitutional right with respect" to Plaintiffs' Contempt Motion. *Id*. at 2. The Notice does not identify the specific right the Terrys invoke, nor the reason for the invocation. At no time have the Terrys invoked any Fifth Amendment right as to any question or item in the financial disclosures required by the Modified PI.

In addition, despite this Court's explicit orders (ECF Nos. 218, 225) that the Terrys appear in person at the January 23, 2026 hearing on the Contempt Motion, Isis Terry failed to do so. ECF No. 228 at 1. At the January 23 hearing, the Court granted Plaintiffs' motion for an order to show cause and informed Mr. Terry that potential civil contempt sanctions include incarceration of the contemnor. The Court later issued an order advising the Terrys that incarceration is a possible civil contempt sanction. ECF No. 228 at 3. The Court has also required Isis Terry to explain her absence from the hearing. ECF 228 at 1-2.

## II.      Legal Standard

"There can be no question that" the Court has the "inherent power to enforce compliance with" its orders "through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) ("Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction") (quoting *United States v. Mine Workers* 330 U.S. 258, 303-04 (1947)). "Civil contempt 'consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *SEC v. Beasley,* No. 2:22-CV-00612-CDS-EJY, 2023 WL 9036917, at *11 (D. Nev. Dec. 28, 2023) (Silva, J.), (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)), *aff'd sub nom. SEC v. Grigsby*, No. 24-628, 2025 WL 817421 (9th Cir. Mar. 14, 2025).

As this Court has explained, "a party seeking a civil contempt order must establish (1) that the alleged contemnor violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." ECF No. 228 at 3, (quoting *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009)) (internal punctuation omitted). "If a moving party meets this four-part test, the burden shifts to the alleged contemnor to show that they took all reasonable steps to comply with the order." *Id*. (quoting *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (internal quotation marks omitted)).

"A sanction for civil contempt is intended to coerce the contemnor to comply with the court's order in the future." *Beasley,* 2023 WL 9036917, at *11 (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992)); *see also Epic Games, Inc. v. Apple, Inc.*, 161 F.4th 1162, 1183 (9th Cir. 2025) ("When a defendant is in contempt, a district court can coerce the defendant to do what a court had previously ordered it to do." (internal punctuation and citations omitted)). Coercive sanctions for refusals to take required actions may include, for

example, imprisonment and fines imposed until the contemnor does what the injunction requires. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441-42 (1911). "The court . . . has the authority to issue a bench warrant for the contemnor's arrest." ECF No. 228 at 3 (citing *Perry v. O'Donnell*, 759 F.2d 702, 706 (9th Cir. 1985)). Courts have also directed entry of default as a contempt sanction. *See, e.g., CFTC v. Main & Prospect Cap., LLC, No.* 2:19-CV-09736-FLA (AFMx), 2021 WL 4434338, at *5 (C.D. Cal. Apr. 16, 2021); *FTC v. Educare Centre Services, Inc.*, Case No. 3:19-cv-00196-KC (W.D. Tex. Jan. 29, 2020) (Ex. 1). Furthermore, the Ninth Circuit has upheld the issuance of a default judgment as a contempt sanction where, as here, a contemnor improperly asserted his Fifth Amendment right. *Baker v. Limber*, 647 F.2d 912, 919-20 (9th Cir. 1981); *see also Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

### III.  Argument

Defendants have violated specific and definite Court orders, did not substantially comply with them, and their failure to comply is not based on a good faith and reasonable interpretation of those orders. The clear and convincing evidence backing these facts is set forth below.

#### A.  Defendants Have Violated Specific and Definite Court Orders

There can be no dispute that Defendants have violated this Court's PIs. This Court has repeatedly ordered Defendants to provide sworn financial disclosure statements and accountings of foreign assets. *See* ECF No. 104 at 15-16 (Section VIII. Financial Disclosures, IX. Foreign Asset Disclosures); ECF No. 111 at 15-16 (Section VIII. Financial Disclosures, IX. Foreign Asset Disclosures); ECF No. 171 at 17-18 (Section VI. Financial Disclosures, VII. Foreign Asset Repatriation); ECF No. 188 at 16-17 (Section VI. Financial Disclosures, VII. Foreign Asset Repatriation). It is undisputed that the terms of the PIs are clear and specific, and the financial disclosure forms Defendants have been required to complete are attached to each of these orders. Despite these clear orders, Defendants have refused to disclose at least the following:

1) **Transfers of Assets**:

    a. Item 23 (Transfers of Assets) of the Financial Statement of Individual Defendant requires the Terrys to "[l]ist each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties). For each such person or entity, state the total amount transferred during that period." The Terrys have refused to provide this information, despite the well-documented evidence already on the record establishing that they were engaged in extensive and complex transfers of assets, particularly cryptocurrency, in an effort to hide their assets from potential creditors and law enforcement actions. ECF No. 140-1 at 12-17; ECF No. 163-1 at 5-13.

    b. Item 31 (Transfers of Assets Including Cash and Property) of the Financial Statement of Corporate Defendant requires the Corporate Defendants to "[l]ist all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer." ECF No. 104-3 at 15. None of the Corporate Defendants provided cryptocurrency transfers, even though the Receiver has found that upwards of $80 million in cryptocurrency was transferred by the Corporate Defendants to Chris Terry; much of it as "untaxed distributions to the Terrys". ECF No. 140-1 at 12. And International Markets Live, Inc. has provided no signed financial disclosure statement. ECF No. 215-2 at 3 (Tenth Tyndall Decl., ¶8).

10

2) **Income**: Item 6 ("Employment Information/Employment Income") of the Financial Statement of Individual Defendant requires the Terrys to disclose their income earned by IML. ECF No. 104-2 at 4. The Terrys have misrepresented how much they earned from the IML scheme. In their financial disclosures they claim to have earned less than $13 million in total from the scheme, but the Receiver has reviewed IML's accounting records and reports that they in fact earned over $100 million. ECF No. 140-1 at 4; ECF No. 140-2 at 83, 102.

3) **Personal Property**: Item 17 ("Other Personal Property") of the Financial Statement of Individual Defendant requires the Terrys to "[l]ist all other personal property not listed in Items 9-16 by category, whether held for personal use, investment or any other reason, including but not limited to… gemstones, [and] jewelry." ECF No. 104-2 at 8. As described above, the Receiver has found evidence that the Terrys did not disclose millions of dollars of personal property, including jewelry, watches, and luxury apparel. *See*, *supra*, Section I.B.

4) **Sworn Accountings of Foreign Assets**: Every PI entered in this case has required each Defendant to "Provide Plaintiffs' counsel and the Monitor [or Receiver] with a full accounting, verified under oath and accurate as of the date of this [order], of all assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant." No Defendant has provided such an accounting.[6]

---

[6] Isis Terry has disclosed limited information about certain foreign entities she is associated with

5) **Trusts**: Item 22 ("Trusts and Escrows") of the Financial Statement of Individual Defendant requires the Terrys to "[l]ist all funds and other assets that are being held in trust or escrow by any person or entity for you, [or] your spouse…" and disclose the value of the assets held by any trust. ECF No. 104-3 at 10. Despite the Auspicious Trust's undisputed existence and holding of significant assets derived from the IML scheme (*see* ECF No. 140-1 at 16-17), the Terrys have refused to disclose the Auspicious Trust on their financial disclosure statements. *Id*. at 9.

### B. Defendants' Failure to Substantially Comply Is Not Based on a Good Faith and Reasonable Interpretation of the PI Orders

For over five months, both the Terrys and all three Corporate Defendants have steadfastly refused to provide information about the recipients of their transfers of cryptocurrency assets and to provide a sworn accounting of their foreign assets. The Terrys have also refused to provide complete and truthful information about their jewelry, watches and luxury apparel, as well as Chris Terry's substantial transfers of assets to his girlfriend, Keishia McLeod. The Terrys have also grossly understated the income they received from the scheme. There can be no credible argument that these refusals are based on Defendants' good faith and reasonable interpretation of the PIs. The language of the PI is clear, and Defendants have never argued otherwise.[7]

### C. The Proposed Sanction of Default Is Appropriate Here

Default is an appropriate sanction here, given Defendants' extensive and willful

---

in her financial disclosure statement, but she did not provide the specific information required by the foreign accounting provision of the Court's orders. Defendants' failure to provide a sworn accounting of their foreign assets is particularly concerning in light of evidence the Receiver has provided about efforts by the Terrys to dissipate luxury apparel items they maintained in Dubai. ECF No. 212 at 12.

[7] Defendants have summarily and vaguely invoked the "Fifth Amendment" in their "Notice of Opposition." ECF No. 219. Plaintiffs have explained why this delayed and improper reference to the Fifth Amendment does not excuse Defendants' failure to comply with their financial disclosure and foreign accounting obligations under the PIs. *See, generally*, ECF No. 220.

12

violations. The Federal Rules of Civil Procedure provide that default is an appropriate sanction when a party willfully refuses to provide documents or information in discovery or as required by a preliminary injunction. Fed. R. Civ. P. 37(b)(2); *see also Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (upholding default as a discovery sanction); *see also Main & Prospect Cap., LLC,* 2021 WL 4434338, at *5; *Educare Centre Services, Inc.*, Case No. 3:19-cv-00196-KC (Ex. 1) (entering a default after defendants in an FTC action failed to file an answer or provide complete financial disclosure statements).[8]

       For over five months now, Defendants have refused to provide information about their cryptocurrency transfers of tens of millions of dollars, and refused to disclose their jewelry, watches and other luxury goods. They also refuse to acknowledge the existence of the Auspicious Trust or disclose the value of the assets held by the Trust. Evidence of the Terrys' willful disregard for the Court's PIs is plentiful. The then-Monitor/now-Receiver stated in his Preliminary Report that "[t]he Terrys have been overtly uncooperative" and "have materially hindered our ability to complete the Monitor duties assigned by the PI." ECF No. 140-1 at 5. He also found that the Terrys' deposition testimony "demonstrates a disrespect for the Court's Orders and, it appears, an obstinate refusal to abide by them." *Id*. At her September 30, 2025 deposition, Isis Terry stated that she had not even read the PI issued against her and had not made any efforts to identify transfers of assets to complete her financial disclosure forms. ECF No. 140-4 at 5, 24. She went on to lie about the value of her engagement ring. *Id*. at 20-23; ECF No. 220-1 at 2, 4 (Eleventh Tyndall Decl., ¶4, Att. A). And she failed to appear at the January 23

---

[8] A district court also can "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling *or other pretrial order*." Fed. R. Civ. P. 16(f)(1)(C) (emphasis added). "This includes granting default judgment or dismissal if a party violates a district court's preliminary injunction order." *KCI USA, Inc. v. Healthcare Essentials, Inc.*, Case No. 1:14cv549, 2018 WL 3196950, at *9 (N.D. Ohio June 29, 2018).

hearing, despite the Court twice ordering her to attend in person.

Likewise, Chris Terry has refused to disclose: (1) the considerable transfers of assets that he made to his girlfriend Keishia McLeod, (2) the transfer of a luxury vehicle to his attorney, George Kelesis, or (3) the recipients of the tens of millions of dollars of cryptocurrency he transferred.[9] The Corporate Defendants, which are closely held by the Terrys, similarly have refused to disclose information about transfers or a sworn accounting of their foreign assets. *See supra* at 5; ECF No. 215-2, 13-59 (Tenth Tyndall Decl.).

A court must consider the following five factors before striking a pleading or declaring default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hester*, 687 F.3d at 1169 (internal quotation marks and citation omitted). Here, a consideration of the factors weighs strongly in favor of default.

First, Plaintiffs brought this civil law enforcement action to stop Defendants' harmful business practices and recover funds for consumers who have been harmed by Defendants' scheme. While the case is pending, the Receiver is charged with marshaling and preserving Defendants' assets, to ensure that they will be available for consumer refunds, should Plaintiffs prevail in this action. Defendants' refusal to identify their assets frustrates this mandate and goal.[10] The public's interest in preserving assets for potential redress to Defendants' victims and

---

[9] Instead, while Plaintiffs' initial motion for a PI was pending, Chris Terry bragged to a potential business partner that: "[p]retend you're a federal government Turn the water on in your faucet. Try to catch it. I am water." ECF No. 175 at 3. Mr. Terry's communications evidence his disdain for Plaintiffs and the Court.

[10] Without truthful and fulsome financial disclosures, Plaintiffs and the Receiver will need to engage in extensive and costly third-party discovery and investigation to obtain that information from other sources, inevitably leading to delays in identifying the Terrys' ill-gotten gains due to

14

expeditious resolution of litigation weighs strongly in favor of default here.

Second, Defendants' well-documented defiance of this Court's orders has resulted in numerous motions, four separate court hearings since the first PI was entered in August, and thousands of pages of court filings. Defendants' obstruction and refusal to cooperate with the Plaintiffs and Receiver have forced this Court to expend significant resources on this case over the past five months. This is a significant burden on the Court's resources. The Court's need to manage its docket weighs strongly in favor of default.

Third, Plaintiffs are unquestionably prejudiced by Defendants' refusal to comply with the PI; it has made it difficult for Plaintiffs to locate Defendants' assets and ensure that the Receiver is marshaling those assets while this action is pending. Given the evidence already on the record demonstrating the Terrys' intent to evade their legal obligations (i.e., creating a trust in an effort to prevent law enforcement from recovering their ill-gotten gains from the IML scheme—ECF No. 163-1 at 9-13), there is the very real risk that Defendants are actively hiding and dissipating assets from Plaintiffs, further reducing the amount of funds that may be available for consumer refunds, should Plaintiffs prevail in this action.[11] The risk of prejudice to Plaintiffs and consumers weighs heavily in favor of default here. *Cf. Forsythe v. Brown*, 281 F.R.D. 577, 591 (D. Nev. 2012) ("Failing to produce documents as ordered is considered sufficient prejudice." (quoting *Allen v. Bayer Corp. (In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1227 (9th Cir. 2006) (internal quotation marks omitted)).

Fourth, while public policy favors decisions on the merits, here Defendants have spent over five months defying this Court's orders, thereby preventing Plaintiffs from obtaining critical

---

their numerous transfers of assets. The costs incurred by the Receiver will limit the assets available for redress to consumers. And it is quite likely that Plaintiffs will not be able to track down all the Defendants' ill-gotten assets without complete and truthful disclosures.

[11] As noted above, the Terrys attempted to evade the asset preservation provision of the initial PI by directing the sale of luxury apparel they kept at their Dubai property.

15

financial information. Under such circumstances, default is appropriate. *See, e.g.*, *Faizi v. Temori*, Case No. 22-cv-04224-VKD, 2023 WL 7603234, at *4 (N.D. Cal. Nov. 13, 2023) (DeMarchi, M.J.) (stating in entering default on claim against defendant that "while the Court always prefers to resolve disputes on their merits, in view of these defendants' ongoing disobedience of the Court's [preliminary injunction and contempt] orders, the Court is not confident that they intend to litigate this matter at all.").

Finally, less drastic sanctions are inadequate here. The Ninth Circuit has identified:

> three factors to assess whether a district court had adequately considered less drastic sanctions: (1) whether the district court explicitly discussed the alternative of lesser sanctions and explained why it would be inappropriate, (2) whether the district court had implemented lesser sanctions before ordering the case dismissed, and (3) whether the district court had warned the offending party of the possibility of dismissal.

*Hester*, 687 F.3d at 1170 (internal quotations and citations omitted). However, "[t]he fact that a court does not implement a lesser sanction before striking an answer is not dispositive. It is just one factor." *Id*. Furthermore, "it is appropriate . . . to reject lesser sanctions where the court anticipates continued deceptive misconduct." *Id*. (internal punctuation and citations omitted).

The most common sanction, monetary penalties, is not an appropriate solution in this case, where the Defendants' known assets are already frozen pending a final decision of this Court. Requiring Defendants to pay a penalty from those assets would merely deplete the pool of funds available for potential future consumer refunds. *Cf. Murphy v. Wells Fargo Bank, NA*, No. CV-10-01391-PHX-ROS, 2013 WL 3930125, at *3 (D. Ariz. July 30, 2013) (finding that as party did not have sufficient financial resources that less drastic monetary sanctions "would be futile"). In essence, issuing a monetary penalty here would require Defendants' victims to pay for Defendants' contempt.

Furthermore, the Court has already given Defendants multiple opportunities to come into compliance, directing the parties to work together on the financial disclosures at the first

contempt hearing in September 2025, and ordering Defendants to come into compliance by November 7, 2025 from the bench at the November 5 hearing, then issuing the Modified PI. None of these repeated attempts by the Court has caused Defendants to clear the contempt.

For the reasons set forth above, Plaintiffs respectfully request that the Court hold all Defendants in civil contempt for failure to comply with the PI. Plaintiffs request that the Court order the Defendants to cure all outstanding PI violations within three days of issuance of the contempt order, and file with the Court, within five days of the issuance of the contempt order, a sworn declaration detailing all the steps the Defendants have taken to cure their noncompliance. Plaintiffs further request that, if Defendants fail to comply fully and timely with the instructions in the contempt order, the Court direct the Clerk to enter default against all Defendants  In the alternative, Plaintiffs respectfully request that the Court: (1) order coercive incarceration of the Terrys until they fully comply with the Modified PI; and (2) direct the Clerk to enter a default as to the Corporate Defendants.

Respectfully submitted,

Dated: January 30, 2026                             /s/ Laura C. Basford

| | |
|---|---|
| AARON D. FORD | THOMAS M. BIESTY |
| Attorney General | LAURA C. BASFORD |
| ERNEST D. FIGUEROA | J. RONALD BROOKE, JR. |
| Consumer Advocate | JOSHUA A. DOAN |
| LUCAS J. TUCKER | Federal Trade Commission |
| SAMANTHA B. FEELEY | 600 Pennsylvania Ave., NW, CC-6316 |
| Office of the Nevada Attorney General | Washington, DC 20580 |
| 8945 West Russell Road, Suite #204 | (202) 326-3043 (Biesty) |
| Las Vegas, NV 89148 | (202) 326-2343 (Basford) |
| (702) 486-3256 (Tucker) | (202) 326-3484 (Brooke) |
| (702) 486-3789 (Feeley) | (202) 326-3187 (Doan) |
| Email: ltucker@ag.nv.gov; | Email: tbiesty@ftc.gov; lbasford@ftc.gov; |
| sfeeley@ag.nv.gov | jbrooke@ftc.gov; jdoan@ftc.gov |
| | |
| Attorneys for Plaintiff | Attorneys for Plaintiff |
| STATE OF NEVADA | FEDERAL TRADE COMMISSION |

17

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Unreported Case: *FTC v. Educare Centre Services, Inc.*, Case No. 3:19-cv-00196-KC (W.D. Tex. Jan. 29, 2020) |